DRAPER, J.
 

 This original proceeding involves application of the civil discovery procedures (Code Civ. Proc., §§ 2016-2035) added in California in 1957 (Stats. 1957, ch. 1904, pp. 3321-3336) and review of the extent of the attorney-client privilege.
 

 LaVerne Bateman, real party in interest, brought an action for damages for personal injuries allegedly sustained when she slipped and fell on the “slick and slippery” surface of the sidewalk or “apron” of defendant-petitioner’s drive-in.
 

 Defendant’s attorney engaged a firm of testing engineers to inspect the sidewalk and apron areas of defendant’s premises and to conduct “slipperiness tests” thereon. Plaintiff took the deposition of one Cheek, who had made the inspections and tests for the engineering firm. On advice of defendant’s counsel, Cheek refused to answer all questions as to the nature of the surface he found, or the nature or results of his inspection and testing. On motion of plaintiff and after hearing, the trial court ordered Cheek to answer all questions “as to what he did, what he observed, what tests he made and how he made them, ’ ’ and also, if his examination showed him qualified as an expert witness, to answer all questions “as to his conclusions from the making of . . .(such) tests.” Defendant seeks writ of prohibition, certiorari or mandate to prevent enforcement of this order.
 

 Defendant first asserts that the information sought
 
 *125
 
 by the questions in issue is within the attorney-client privilege. (Code Civ. Proc., § 1881, subd. 2.) We cannot agree. None of the questions calls for the report of Cheek to defendant’s attorney, and counsel for plaintiff specifically disclaims any desire to inspect or to ask about that report. Thus no question as to the confidential character of any written or oral communication from the expert to the attorney who employed him is before us. Defendant relies upon
 
 Holm,
 
 v.
 
 Superior Court,
 
 42 Cal.2d 500 [267 P.2d 1025, 268 P.2d 722]. But that ease held that a bus driver’s report upon the facts of an accident, made to the driver’s employer for transmission to the employer’s attorney, is privileged. In our case, however, plaintiff seeks no disclosure of the contents of any report or other communication made to defendant’s attorney. Rather, plaintiff seeks only to inquire as to Cheek’s knowledge, as distinguished from anything he wrote or said to defendant’s counsel.
 

 The essence of defendant’s claim, although not specifically so recognized and stated by it, is that Cheek’s knowledge came to him solely by reason of his position as intermediary in a confidential communication from client to attorney. If this were so, he could not be compelled to reveal any such information, on deposition or otherwise, in the absence of waiver of the privilege
 
 {City & County of San Francisco
 
 v.
 
 Superior Court,
 
 37 Cal.2d 227 [231 P.2d 26, 25 A.L.R.2d 1418].) Under that holding, the expert would be the agent of defendant if engaged by it, or if engaged by the attorney would be the subagent of defendant. To the extent that the client reveals information to such agent or subagent, in confidence and for transmission to the client’s attorney, the agent or subagent is but an instrument of communication between client and attorney, and cannot be required to reveal what he received or perceived only for such transmission. However, the facts of our case seem to us distinguishable from those of
 
 City & County of San Francisco
 
 v.
 
 Superior Court.
 

 The privilege attaches to knowledge acquired from a client, either by his attorney or by an intermediary between client and attorney, only when there is a communication of such knowledge by the client, which communication is made in confidence. When the client does not intend his communication to be confidential, it is not privileged.
 
 {Price
 
 v.
 
 Superior Court,
 
 161 Cal.App.2d 650, 652 [327 P.2d 203], and eases there cited.) Also, as is apparent on the face of the code section, it is essential to a claim of privilege that
 

 
 *126
 
 there be a communication. It is true that actions, signs or other means of transmission of information may be communications within the privilege.
 
 (City & County of San Francisco
 
 v.
 
 Superior Court, supra,
 
 37 Cal.2d 227, 235, and authorities there cited.) As to any such act, the question is whether it was intended as a communication. But “those data which would have come to the attorney’s notice in any event, by mere observation, without any action on the client’s part—-such as the color of his hat or the pattern of his shoe— and those data which become known by such acts as the client would ordinarily have done in any event, without any purpose of communicating them to the attorney as his adviser . . . these are not any part of the communication of the client . . .” (8 Wigmore, Evidence, 3d ed., § 2306, p. 590). What the attorney observes of or hears from his client is not always privileged.
 
 (People
 
 v.
 
 Gilbert,
 
 26 Cal.App.2d 1, 22 [78 P.2d 770];
 
 Gallagher
 
 v.
 
 Williamson,
 
 23 Cal. 331 [83 Am.Dec. 114] ;
 
 Olivers. Warren,
 
 16 Cal.App. 164, 168-169 [116 P. 312].) It is apparent that some ingredient of disclosure or revelation is essential to the element of communication.
 

 We have concluded that both elements, communication and confidentiality, are lacking in the knowledge over which defendant here seeks to spread the cloak of privilege. The object of Cheek’s inspection, and the source of the knowledge as to which plaintiff seeks to question him, is the sidewalk area in front of defendant’s drive-in. This area is open to the public. It is as readily visible to anyone approaching the building as is the color of the hat or pattern of the shoe a client wears to his lawyer’s office. No act which defendant would not have done in the ordinary course of his business was required to make known to Cheek the characteristics of this sidewalk. Similarly, the element of confidentiality present in
 
 City & County of San Francisco
 
 is wholly lacking here. There the injured plaintiff submitted himself to a neurological and psychiatric examination by a physician. In permitting testing of his physical and mental reactions, he clearly revealed to the doctor retained by his attorney characteristics of both his mind and his body which normally would be concealed and which, without his revelatory acts and cooperation at his attorney’s request, would not have been known. The apparent resemblance of this case to
 
 City & County of San Francisco
 
 v.
 
 Superior Court, supra,
 
 37 Cal.2d 227, disappears upon this closer analysis.
 

 It must be again emphasized that no report or other com
 
 *127
 
 munication by Cheek to defendant's attorney is here sought. Knowledge which is not otherwise privileged does not become so merely by being communicated to an attorney. (Ann. Cases 1913A, p. 5.) Obviously, a client may be examined on deposition or at trial as to the facts of the case, whether or not he has communicated them to his attorney. (See
 
 Holm
 
 v.
 
 Superior Court, supra,
 
 42 Cal.2d 500.) While the privilege fully covers communications as such, it does not extend to subject matter otherwise unprivileged merely because that subject matter has been communicated to the attorney. “ (A) litigant cannot silence a witness by having him reveal his knowledge to the litigant’s attorney.”
 
 (City & County of San Francisco
 
 v.
 
 Superior Court, supra,
 
 37 Cal.2d 227, 238.)
 

 One decision
 
 (Wilson
 
 v.
 
 Superior Court,
 
 148 Cal.App.2d 433, 441-442 [307 P.2d 37]) contains language indicating that exhibition to an expert of land and of construction in progress thereon, for the purpose of reporting to the owner’s attorney, brings the expert’s knowledge within the attorney-client privilege. That opinion, however, does not consider the elements of communication and confidentiality just discussed. Moreover, the language relied upon by petitioners was not necessary to the decision, which held that the expert’s knowledge was not privileged.
 

 The attempt to extend the attorney-client privilege to the case at bar breaks down when its application at time of trial is considered. If the sidewalk were destroyed tomorrow by earthquake or explosion, it would hardly be argued that Cheek could not be called by plaintiff at trial of the case, to testify as to the condition at the time of his inspection shortly after the accident. Defendant’s attorney, at oral argument before us, was most reluctant to assert a contrary view. Yet counsel in such cases as this often overlook the fact that what is privileged at all is privileged forever, in the absence of a waiver. The essence of the privilege is that neither attorney nor client (nor agent or subagent of the client) can be compelled to disclose the privileged communication. No distinction is to be made in this respect between pretrial discovery and examination at trial.
 

 Unfortunately, much of the attempt to extend privilege, before the discovery acts, arose from a desire to limit “fishing expeditions.” While it has never been logically possible to have a broad attorney-client privilege for pretrial discovery, and a narrower one for actual trial, the feeling against pre
 
 *128
 
 trial disclosure of one’s case is discernible in the arguments and to some extent in the decisions of earlier years. Now that piscatorial excursions are licensed by the discovery act, and open angling season established in many areas, some reorientation seems indicated.
 

 Although the privilege serves to suppress relevant facts and thus is to be strictly construed
 
 (City & County of San Francisco
 
 v.
 
 Superior Court, supra,
 
 37 Cal.2d 227, 234), its purpose is to encourage a client to make a full disclosure to his attorney
 
 (Holm,
 
 v.
 
 Superior Court, supra,
 
 42 Cal.2d 500, 506-507;
 
 Grover
 
 v.
 
 Superior Court,
 
 161 Cal.App.2d 644, 646 [327 P.2d 212]). The validity and value of that purpose has seldom been questioned (8 Wigmore,
 
 supra,
 
 § 2291, p. 553). We have no desire to constrict the bounds within which the attorney-client privilege may reasonably serve that laudable purpose. Rather, we are convinced that the case at bar presents no reasonable basis, under the view adopted in this state long before the discovery act, for application of the privilege.
 

 We are utterly unable to accept the contention of plaintiff that communications between Cheek and defendant’s attorney are unprivileged because Cheek was engaged for the purpose of testifying at the trial. To apply this limitation in the normal attorney-client relationship would remove the privilege from all consultations which had to do with preparation of the client to take the witness stand. Such limitation would completely defeat the legitimate purpose of the privilege. However, for the reasons previously stated, we are satisfied that Cheek’s knowledge, as distinguished from his report to counsel, is unprivileged.
 

 Having determined that the attorney-client privilege was inapplicable, the trial court appears to have considered that plaintiff was entitled to the information sought as a matter of right. The record before us indicates no showing of good cause to require disclosure of the requested information, nor any consideration of that issue by the court. If the only issue were that raised by the claim of the attorney-client privilege, this omission might be proper.
 

 However, defendant did assert, as reasons for denying the disclosure sought by plaintiff, that the desired information consisted of the work product of the attorney and, secondly, that it consisted of the observations and conclusions of an expert employed by the party. It is argued that, in either such situation, the order for disclosure is justified only if good cause therefor be shown.'
 

 
 *129
 
 We do not accept defendant’s contention that the information here sought is the work product of its counsel within the meaning of the rule laid down in
 
 Hickman
 
 v.
 
 Taylor,
 
 329 U.S. 495 [67 S.Ct. 385, 91 L.Ed. 451], There the material sought was wholly from the files of the attorney, all the product of his effort, research, and thought. Such is not the case here. In our case it is the thought, research and effort of Cheek which is sought by plaintiff. Although defense counsel may have exercised ingenuity in determining that “slipperiness” of the walk could be tested, this is not enough, as we read Hickman, to make the examination and tests of Cheek the work product of counsel. Thus we need not determine whether the “work product” rule of Hickman should be adopted in this state.
 

 There is merit, however, in defendant’s contention that fairness requires a showing of good cause as a condition to exercise of the power of the court to require pretrial disclosure of the observations and conclusions of an independent expert engaged by a party as part of his preparation for trial, after occurrence of the event sued upon, to examine and reach conclusions upon an object in issue. This rule avoids the permanency and inflexibility which would follow if the cloak of privilege were extended to cover the testimony of such experts. Its flexibility and terminability commend it.
 

 We are in complete accord with the view that the discovery provisions are to be liberally construed.
 
 (Laddon
 
 v.
 
 Superior Court,
 
 167 Cal.App.2d 391, 395 [334 P.2d 638];
 
 Grover
 
 v.
 
 Superior Court, supra,
 
 161 Cal.App.2d 644, 648.) The federal view that discovery procedures should achieve “ (m)utual knowledge of all the relevant facts gathered by both parties”
 
 (Hickman
 
 v.
 
 Taylor, supra,
 
 329 U.S. 495, 507) may not be so fully applicable in California, since here we continue to rely upon the pleadings, in part at least, for “the pre-trial functions of notice-giving, issue-formulation and fact-revelation” which the pleadings no longer serve in the federal courts.
 
 (Hickman
 
 v.
 
 Taylor, supra,
 
 p. 500.) But the federal statement, at least in some substantial degree, is descriptive of the purpose of the California act which is so largely modelled upon the federal rules relating to discovery.
 

 However, under the broadest statement of its purposes, pretrial discovery is subject to some limitations.
 
 (Hickman
 
 v.
 
 Taylor, supra,
 
 pp. 507-508.) One such limitation seems reasonably to be drawn along the line distinguishing fact from
 
 *130
 
 opinion. The statute contemplates broad discovery of facts directly relating to the event or transaction in issue. But a somewhat different classification may well be assigned to the testimony of an independent expert engaged after the event or transaction to form an opinion upon some feature of it (see 4 Moore’s Federal Practice, 2d ed., p. 1157). While such an expert normally is engaged with the idea that he will be called as a witness, he also serves, in most eases, as an adviser to counsel in determining upon an approach to the features of the ease involving expert opinion, and these in turn indicate approach, emphasis, and legal theories for the case as a whole. Further, pretrial investigation of the opinions of an opponent’s experts may tend to encourage a contest of successive employment of experts, each to report or elaborate upon some element of the opinion expressed by the last. Such a contest, with its financial burdens, could well amount to the ‘ ‘ oppression” which the statute proscribes (Code Civ. Proc., §§ 2019, subd. (b)(1), 2030, subd. (b)). And limitless pretrial investigation of the views of opposing experts might well defeat the expedition of trial, which is one objective of discovery. The possible evils of unrestricted discovery of experts’ views in cases turning largely upon expert testimony, such as condemnation, have been recognized.
 
 (United States
 
 v.
 
 6.82 Acres of Land,
 
 18 F.R.D. 195;
 
 United States
 
 v.
 
 Certain Acres of Land,
 
 18 F.R.D. 98;
 
 Hickey
 
 v.
 
 United States,
 
 18 F.R.D. 88.) In eases such as that at bar, the possibility of confusion, expense, and delay is also present, although perhaps in lesser degree. We have given consideration, although not controlling weight, to the fact that a majority of the federal courts which have considered this question have required that good cause be shown in such case (see cases cited in 4 Moore,
 
 supra,
 
 par. 26.24 and 1959 supplement thereto). No purpose would be served by citing these cases separately here.
 

 The statute expressly requires a showing of good cause for discovery only for inspection and copying (Code Civ. Proc., § 2031, subd. (a)). No such requirement is expressed in the sections dealing with depositions, whether taken orally or upon written interrogatories (Code Civ. Proc., §§ 2019, 2020). However, if a deponent refuses to answer, the examining party is authorized, as was done here, to apply to the court for an order compelling an answer (Code Civ. Proc., § 2034). While the standard is not spelled out, it is clear that the court, in either granting or denying the order compelling an answer, must act upon cause shown to it. We hold here that the refusal
 

 
 *131
 
 of an independent expert to answer is justified unless the party seeking to compel his answer shows good cause therefor. It will be noted that the same result was reached (although for purposes of applying the requirement in a situation not involved or considered here) in
 
 Hickman
 
 v.
 
 Taylor, supra.
 
 Under rules substantially comparable to the wording of our statute, the court there held that the inquiry properly should have been made under the rule concerning depositions, rather than that dealing with inspection of documents. Despite the lack of a specific requirement in the former rule for the showing of good cause, it was held that the requirement applied.
 

 It would be unwise and impractical to attempt to spell out here a rigid definition of good cause upon this issue. It is clear that if the object inspected and tested by the expert is no longer available and has not been examined or tested by the opponent’s experts, good cause to interrogate the expert exists. Similarly, where the testing has so altered the object tested that the opponent cannot make like tests, inquiry should be allowed (see
 
 Lewis
 
 v.
 
 United Air etc. Corp.,
 
 32 F.Supp. 21).
 

 In the infinite variety of circumstances which may arise in the course of human activity, as revealed in the complexities of litigation, many other factors may, collectively or individually, justify inquiry into the acts and thoughts of the independent expert. We do not attempt here to foresee and to detail them. Rather, we leave them to determination as they arise. Such determination will be facilitated by the exercise of a sound discretion in the trial courts in balancing the values of mutual pretrial knowledge of the relevant facts against the elements of “annoyance, expense, embarrassment or oppression” (Code Civ. Proc., §§2030, subd. (b), 2019, subd. (b)(1)).
 

 To avoid confusion in the trial courts, we specifically disclaim any intention to place major emphasis upon an offer of the questioning party to pay all or a part of the fee or costs of the opponent’s expert. References to this factor in some federal eases (see 4 Moore,
 
 supra,
 
 p. 1158) might, in the absence of this disclaimer, mislead bench and bar. Overemphasis upon the feature of cost could lead to an inappropriate air of barter. Conceivably, situations may arise in which fee and expenses of the expert could be a factor having some bearing upon the issue of good cause. Save in unusual cases, however, those items should not be given weight.
 

 Also, we point out that the requirement of showing
 
 *132
 
 of good cause can have no application when the matter sought to be discovered is within the attorney-client privilege. No possible showing of good cause can dissipate or destroy that privilege where it truly applies. It should be noted, too, that the rule we have enunciated, requiring a showing of good cause, does not extend to an employee, however expert, who made decisions for his party-employer as to fabrication of a structure whose adequacy is in issue.
 
 (Moran
 
 v.
 
 Pittsburgh-Des Moines Steel Co.,
 
 6 F.R.D. 594.) The opinion and decision of such an employee, reached before the event in issue, can go to the core of the question of due care in construction and is not within the operation of the rule laid down in this decision. It is a fact in issue. Thus the protective rule would not extend to the defendant engineer considered in
 
 Wilson
 
 v.
 
 Superior Court, supra,
 
 148 Cal.App.2d 433, which was decided before enactment of the discovery statute.
 

 In the case at bar, it is apparent that the trial court gave no consideration to the issue of good cause to require the disclosure sought by plaintiff. The scanty record which the parties have placed before us does not enable us to resolve that question. Mandamus is a proper remedy to require the trial court to consider the issue upon which it has not passed.
 
 (Dauenhauer
 
 v.
 
 Superior Court,
 
 149 Cal.App.2d 22, 28-29 [307 P.2d 724].)
 

 Peremptory writ of mandate requiring vacation of the order of July 20, 1959, shall issue. The matter is remanded with instructions to the trial court to determine the issue of good cause upon the evidence now before it and such other evidence as may be offered, and to enter its order upon plaintiff’s motion in accordance with that determination.
 

 Kaufman, P. J., and Dooling, J., concurred.