[Civ. No. 28700.   Second Dist., Div. Two.   Dec. 14, 1964.]

MEYER M. SWARTZMAN et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; THE PEOPLE ex rel. THE DEPARTMENT OF PUBLIC WORKS, Real Party in Interest.

Louise D. Dale for Petitioners.

No appearance for Respondent.

Harry S. Fenton, R. B. Pegram, Joseph A. Montoya, Richard Franck, and Jack M. Miller, for Real Party in Interest.

FLEMING, J.—Petition for writ of mandate or prohibition to set aside pretrial rulings of the Los Angeles Superior Court. Petitioners are defendants in an eminent domain proceeding brought by the State of California on October 3, 1963. After the cause was at issue, the state advised petitioners in February 1964, that the amount of property taken would be reduced, and in March 1964, the state furnished petitioners with a map and an amended legal description of the property to be taken. On July 15, 1964, the state noticed (1) a motion to amend the complaint to set forth the amended description of the property, and (2) a motion to set for pretrial and trial prior to October 1, 1964 (apparently to get to trial within one year in order to establish valuation at the date of summons, pursuant to Code of Civil Procedure, section 1249).

On July 21, 1964, before William E. MacFaden, J., in department 60 of the superior court, petitioners contested the motions, arguing they had not had sufficient opportunity for discovery on the amended description of the property, and had not had proper notice of setting for pretrial and trial because no memorandum to set had been filed. The court allowed the amendment, and set the case for a first pretrial hearing on August 19 in department 60, for a second pretrial hearing on September 18 in department 60, and for trial on September 30 in department 1.

Thereafter petitioners filed a demurrer, a motion to strike, and a motion to reconsider the order setting the case for pretrial and trial. On August 11 in department 60 the demurrer was overruled, the motions denied, and petitioners given five days to file an amended answer to the amended complaint.

On August 14 petitioners' counsel filed a declaration of prejudice against Judge MacFaden, seeking to disqualify him under Code of Civil Procedure, section 170.6. On August 19 Judge MacFaden refused to disqualify himself and proceeded with pretrial over petitioners' objection. His pretrial order required the parties to complete all law and motion matters and all discovery by September 18, the scheduled

date for the second pretrial conference; to file any amendment in connection with the issue of public use and necessity by that date; and to lodge appraisal reports with the court by September 18, which reports, if determined by the court to be fair and comparable, would then be exchanged between the parties.

On August 28 petitioners noticed the taking of the deposition of the state's independent appraiser for September 8. On September 4 the state moved for a protective order on the ground that the taking of the deposition at that time would be dilatory, annoying, oppressive, harassing, burdensome, expensive, and unjust, and that the only matters proper to the deposition not already covered by answers to interrogatories would be fully disclosed by the mutual exchange of appraisal reports at the pretrial conference. The court issued a protective order prohibiting the taking of the deposition until further order of court. Petitioners renewed their motion to disqualify the judge under section 170.6, and their motion was again denied.

Petitioners ask this court to compel the trial court: (1) to vacate the pretrial and trial settings until a memorandum to set has been filed stating the case is at issue, or to continue the settings for a reasonable time to permit petitioners to complete discovery; (2) to transfer all further proceedings to another judge; (3) to vacate the pretrial order for an exchange of appraisal reports; (4) to vacate the protective order and permit petitioners to take the appraiser's deposition.

## (1) *Pretrial and Trial Settings*

Petitioners contend the only proper way to set a case for pretrial and trial is found in rules 206 and 209(b) of the California Rules of Court. Rule 206 states: "(a) No civil case . . . shall be set for a pretrial conference or for trial until it is at issue and unless a party thereto has served and filed therein a memorandum to set, . . ." Rule 209(b) provides that the clerk shall put the time and place of the pretrial conference on the civil active list and give 40 days notice by mail of the pretrial conference to all parties.

The State of California relies on the procedure for special settings by the court for trial and for pretrial provided in rules 225 and 209(a). Rule 225 provides that "Motions to advance, reset or specially set cases for trial shall be made on notice to all other parties, and shall be presented to the judge . . . " and rule 209(a) provides that motions to advance,

reset, or specially set for pretrial conference shall be made in the same manner as such motions are made for trial.

█ The procedure for special setting by a judge of a case for trial and pretrial need not conform in all respects to the rules for filing and notice which apply to a routine setting by the clerk. Clearly, it provides a method for shortening formalities in appropriate cases by direct application to the court. In *County of San Mateo* v. *Bartole,* 184 Cal.App.2d 422 [7 Cal.Rptr. 569], an eminent domain case, no memorandum to set the case for trial had been served, and plaintiff did not file its motion to specially set for trial until 33 days before the expiration of the year's valuation date under Code of Civil Procedure, section 1249. Plaintiff's motion for special setting was granted, and the case was set for pretrial 17 days after the order and for trial 31 days after the order. The settings were held proper on appeal. In the present case the final pretrial date was 59 days after the setting and the trial date 71 days after the setting order.

Special settings on motion under rules 225 and 209(a) provide appropriate means to accelerate eminent domain proceedings and bring them to trial expeditiously. They conform to the legislative requirement that courts give these actions preference over all other civil actions in the matter of setting for trial and hearing the same. (Code Civ. Proc., § 1264.) They are authorized by Code of Civil Procedure, section 1005, which gives courts and judges specific authority in all cases to shorten the time for the notice and hearing of motions.

█ Here, petitioners had exact knowledge of the extent and nature of the taking since March 1964. Petitioners had notice of the final pretrial and trial dates more than two months in advance of trial. Petitioners had ample opportunity to prepare. The settings were a proper exercise of the trial court's discretion in controlling its calendar in order to achieve the preferential handling of eminent domain proceedings required by statute.

(2) *Disqualification of Judge*

█ Petitioners contend that all further proceedings in the trial court should be transferred to another judge, citing Code of Civil Procedure, section 170.6, which permits one automatic disqualification of a judge in each case on the claim of prejudice, if made five days before the hearing, or, if the judge is not known at that time, not later than the commencement of proceedings.

This contention is without merit, since petitioners' motion was not timely filed. A challenge under section 170.6 is not timely when made after a judge has heard and ruled on contested issues of law or fact in an action or proceeding. (*McClenny* v. *Superior Court*, 60 Cal.2d 677 [36 Cal.Rptr. 459, 388 P.2d 691] ; *Jacobs* v. *Superior Court*, 53 Cal.2d 187 [1 Cal. Rptr. 9, 347 P.2d 9].)

In the instant case, without challenge, on July 21 the judge heard contested motions to amend the complaint and to specially set, and, without challenge, on August 11 he heard petitioners' contested demurrer, motion to strike, and motion to reconsider his prior ruling. The subsequent challenge came too late.

In *Michaels* v. *Superior Court*, 184 Cal.App.2d 820 [7 Cal. Rptr. 858], defendant appeared specially to challenge the jurisdiction of the trial court in a contempt action. After the judge rejected defendant's jurisdictional challenge, defendant moved to disqualify the judge from hearing the contempt matter. The motion was properly denied. On similar facts the court in *Robinson* v. *Superior Court*, 186 Cal.App.2d 644 [9 Cal.Rptr. 130], ruled that a motion under section 170 filed subsequent to the preliminary hearing was no longer timely, the court stating that parties who appear before a judge and lose the first round cannot attempt to disqualify him under section 170 for the remaining rounds. In *Thompson* v. *Superior Court*, 206 Cal.App.2d 702, 707 [23 Cal.Rptr. 841], the rule is stated that if any of the proceedings over which a judge has presided prior to the hearing in which his qualification is challenged were such that he could have been challenged but was not, a subsequent motion to disqualify comes too late.

We hold that petitioners waived their right to automatically disqualify Judge MacFaden by not acting at the time of their first contested hearing before him.

(3) *Pretrial Order*

The pretrial order of August 19 provided for an exchange of appraisal reports.　　　█　　Petitioners contend there is no requirement that an owner whose property is being taken in eminent domain proceedings obtain the services of an appraiser and incur the expense of an appraisal report. This is correct. The defendant-owner himself may testify to the value of his property and submit valuation data. But the court may require him to disclose the facts and circumstances on which he intends to rely at the time of trial to support

his valuation and to disclose this data in advance of trial pursuant to regular court procedures. ■ The Policy Memorandum of the Los Angeles Superior Court in Eminent Domain Cases, dated July 1, 1963, contemplates an exchange of valuation data at pretrial. Such an exchange provides an appropriate and effective method for the dispatch of this type of litigation and is authorized by Code of Civil Procedure, sections 2031, subdivision (a), and 2019, subdivision (b)(1), which latter section provides: ". . . upon motion seasonably made by any party . . . or *upon the court's own motion* and after giving counsel an opportunity to be heard, and in either case for good cause shown, the court in which the action is pending may make an order . . . *that the parties shall simultaneously file specified documents or information* . . . to be opened as directed by the court; or the court may make *any* other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression." ( Italics added.)

Exchange in advance of trial of data on which a party intends to rely to establish valuation has been approved by our Supreme Court and by the federal courts (from which our discovery rules were derived) as an appropriate means of compelling mutual disclosure of relevant information sufficiently ahead of time to permit each party to study the contentions of the other and explore their validity outside the courtroom rather than at the trial itself. The beneficial effects of pretrial disclosure are too well known to require extended comment here. On the specific point it is sufficient to refer to *Oceanside Union School Dist.* v. *Superior Court,* 58 Cal.2d 180, 192 [23 Cal.Rptr. 375, 373 P.2d 439], where the court said: "The trial court, in the exercise of its discretion, might have ordered the matter held in abeyance until such time as the parties were in a position to trade appraisals (as is done in the federal district courts)"; and to the case of *Mowry* v. *Superior Court,* 202 Cal.App.2d 229, 244 [20 Cal. Rptr. 698], in which the court said: "To obviate the injustice of discovery in this respect being a 'one-way street' it seems to us proper to, and we do, rule that *an exchange* of 'comparable sales' information between condemnor and condemnee is contemplated by the Discovery Act, as interpreted by the *Greyhound* decision. . . ."

We specifically approve the Los Angeles Superior Court policy of compulsory mutual exchange of full appraisal data in advance of trial.

## (4) *Protective Order*

Petitioners attack the order prohibiting the taking of the deposition of the state's independent appraiser, contending that Code of Civil Procedure, section 2016, gives a party an absolute right to take the deposition of anyone at any time, and that a writ of mandate should issue to compel such discovery when denied by the trial court.

The state argues that Code of Civil Procedure, section 2019, subdivision (b)(1), permits the trial court to control the exercise of discovery in order to make it mutual and reciprocal and fair; that it authorizes the court to enter protective orders to prevent abuses of discovery; and that justice in this case required the exercise of such control in order to preserve fairness and mutuality.

The problem of fairness and mutuality in discovery proceedings involving an expert in advance of trial presents considerations absent from the case of the usual fact witness. The expert normally has no relevant information about the case but has been employed, usually by counsel, in the hope he can develop favorable relevant opinions on specific matters. The expert may examine specific items of evidence, such as questioned documents, anatomy in a personal injury, books and accounts in an accounting, specific machinery in a breach of warranty, or, as here, real property in a condemnation proceeding. If the expert forms an opinion on the subject, he has created potential relevant evidence, and if he later qualifies as an expert and testifies to his opinion, he has given relevant evidence.

To complicate his position, the expert normally wears two hats. He is employed by counsel to form an opinion which he may later present as a witness in court. He is also engaged as an adviser on trial preparation and tactics for the case and in this latter capacity serves as a professional consultant to counsel on the technical and forensic aspects of his specialty. From the point of view of counsel, the expert's freedom to advise counsel, to educate counsel on the technical problems of his case, to prepare him to handle unfamiliar data in court, to analyze the availability of expert opinion and the need for its use, all without hindrance from the opposing side, are important elements of counsel's privacy of preparation. Consultation between expert and counsel may appropriately be given broad immunity from discovery, both as to expert and as to counsel, because none of the expert's opinion, professional though it may be, is relevant evidence in the case.

To the contrary, his opinion is and will remain wholly irrelevant and immaterial as evidence until the expert is called as a witness on the trial and shown to be qualified to give competent opinion testimony on a matter in which he is versed and which is material to the case. (*United States* v. *Certain Parcels of Land,* 15 F.R.D. 224, 233.)

Under the general name of fairness the courts have continued to respect privacy of preparation for trial, even under the modern expansion of the machinery of discovery. This policy was made explicit in California by the addition in 1963 of Code of Civil Procedure, section 2016, subdivision (g) : "It is the policy of this State (i) to preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases and (ii) to prevent an attorney from taking undue advantage to his adversary's industry or efforts." Under such a policy a party cannot substitute the wits of his adversary's expert for wits of his own in analyzing the case. (*Hickman* v. *Taylor,* 329 U.S. 495, 516 [67 S.Ct. 385, 91 L.Ed. 451].)

Coincidentally in 1963, New York adopted a comparable policy restricting disclosure of material prepared for litigation, including opinions of experts prepared for litigation. (New York, C.P.L.R. § 3101(d).)

Nevertheless the initial status of the expert, as consultant and possible witness, changes its character at that point in the suit when it has become known he will actually testify as a witness. ▆▆▆ When it becomes reasonably certain an expert will give his professional opinion as a witness on a material matter in dispute, then his opinion has become a factor in the cause. At that point the expert has ceased to be merely a consultant and has become a counter in the litigation, one to be evaluated along with others. Such evaluation properly includes appropriate pretrial discovery. (*San Diego Professional Assn.* v. *Superior Court,* 58 Cal.2d 194 [23 Cal.Rptr. 384, 373 P.2d 448] ; *Brown* v. *Superior Court,* 218 Cal.App.2d 430 [32 Cal.Rptr. 527] ; *Grand Lake Drive In, Inc.* v. *Superior Court,* 179 Cal.App.2d 122 [3 Cal.Rptr. 621, 86 A.L.R.2d 129].)

With recognition of these problems the courts have attempted to work out methods of mutual disclosure of the opinions of potential witnesses which will achieve desired results with minimum waste motion and with fairness to all

concerned. In condemnation proceedings this has taken the form of an exchange of reports of experts during the final pretrial proceedings immediately in advance of trial. The key element is mutuality. Were the courts not rigorous in insisting on mutuality of disclosure and were they to adopt a soft and wishy-washy attitude toward recalcitrant litigants reluctant to comply with their orders, they would quickly inhibit any genuine disclosure in advance of trial in the case of opinion witnesses, for parties could merely claim, as petitioners did here, they had not yet decided whether to use any expert witnesses and could continue to profess indecision until the day of trial.

The rules of discovery contemplate two-way disclosure and do not envision that one party may sit back in idleness and savor the fruits which his adversary has cultivated and harvested in diligence and industry. Mutual exchange of data provides some protection against attempted one-way disclosure; the party seeking discovery must be ready and willing to make an equitable exchange. (*Hickman* v. *Taylor*, 329 U.S. 495 [67 S.Ct. 385, 91 L.Ed. 451]; *Oceanside Union School Dist.* v. *Superior Court*, 58 Cal.2d 180, 192 [23 Cal.Rptr. 375, 373 P.2d 439]; *Ryan* v. *Superior Court*, 186 Cal.App.2d 813 [9 Cal.Rptr. 147].)

In this case no good cause was shown for the taking of the deposition of the state's potential expert witness in advance of the exchange of appraisal data ordered by the court. ▓▓ In the case of expert opinion witnesses good cause normally must be shown to compel a deposition in advance of trial, and in the absence of good cause a motion to quash the deposition is justified. (*Grand Lake Drive In, Inc.* v. *Superior Court*, 179 Cal.App.2d 122, 130-131 [3 Cal.Rptr. 621, 86 A.L.R.2d 129].) After an exchange of appraisal data has taken place, the deposition may become unnecessary, or depositions of experts on both sides may be appropriate, or depositions on limited aspects of the case may be in order. The principle of mutuality will continue to serve the court in whatever subsequent orders it makes.

▓▓▓ Here, petitioners refused offers of mutual exchange of data, petitioners refused an offer of simultaneous depositions of experts on both sides after the state's appraisal witness had finished his preparation. Petitioners, in open court, on July 21, August 11, August 19, September 4, and September 18, stated they had not obtained an appraiser, did not know whether they would obtain an appraiser, would not agree

to commit themselves not to use an appraiser at the time of trial, and insisted on their absolute right to depose the opposing side's appraisal witness without any mutual simultaneous exchange of valuation data. Clearly, petitioners sought to play their hand with their cards close to the chest while demanding that their opponent play its cards face up from the table. Such one-way discovery, no give and all take, would quickly drive fairness and mutuality out of pretrial investigation.

We conclude that no good cause was shown for the taking of the expert's deposition prior to the exchange of appraisal data ordered by the trial court, that the protective order properly issued.

The petition for a writ is denied on all points, and the alternative writ is discharged.

Herndon, Acting P. J., and Kincaid, J. pro tem.,* concurred.

Petitioners' application for a hearing by the Supreme Court was denied February 10, 1965.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.