150 N.J. Super. 456 (1977)
375 A.2d 1244
DELORES FRANKLIN AND LINWOOD D. FRANKLIN, PLAINTIFFS-APPELLANTS,
v.
DR. EDWARD S. MILNER, JR. AND DR. PHILIP D'ARRIGO, P.A., JOINTLY AND SEVERALLY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 1, 1977.
Decided June 9, 1977.
*458 Before Judges HALPERN, ALLCORN and BOTTER.
Mr. Jeffrey A. April argued the cause for appellants (Messrs. Perskie and Callinan, attorneys).
Mr. G. Paul Crawshaw argued the cause for respondents (Messrs. Martin, Crawshaw & Mayfield, attorneys).
Messrs. Hannoch, Weisman, Stern & Besser filed a brief for amicus curiae Association of Trial Lawyers of America  New Jersey Branch (Mr. James J. Shrager, of counsel; Mr. Allan H. Ickowitz on the brief).
The opinion of the court was delivered by BOTTER, J.A.D.
With leave of court (R. 2:2-4) plaintiffs appeal from an order compelling discovery of two letters,[1] both dated December 15, 1975, written by Dr. Earl Kanter, plaintiff's prospective expert witness in this medical malpractice case. Plaintiffs contend that the letters are not discoverable because they express their expert's opinion on "hypothetical situations" and contain "mental impressions and advice on trial strategy and and tactics as distinguished from the expert's evaluation of the factual case presented to him by the party who hires him." The amicus curiae brief, filed with leave of the court, asserts: "The statements and thoughts of an expert retained by a party's attorney to aid in trial preparation, which deal with trial strategy and considerations extrinsic to the witness' expert testimony, are privileged and protected by the `work product' doctrine." Plaintiffs and amicus curiae further contend that the communications *459 are not discoverable under the terms of R. 4:10-2(d) and that the trial judge misconstrued R. 4:10-2(c).
Defendants contend that the letters are discoverable under R. 4:10-2(d); that R. 4:10-2(c) does not prohibit this discovery; that the letters (which defendants have not seen because the trial judge stayed execution of his order pending appeal) are not "work product," and that defendants have shown substantial need for this information and its unavailability from other sources. They contend that the letters are needed to avoid surprise, to aid in effective cross-examination and rebuttal, and to elicit the full truth.
A brief recitation of pertinent events will sharpen the issues. Plaintiffs and defendants each engaged a board-certified obstetrician and gynecologist to review the case and give their opinions as to the alleged medical malpractice of Dr. Milner. On January 31, 1974 Dr. Milner had performed a laparoscopic tubal ligation upon Mrs. Franklin for sterilization purposes. (We are told that Mrs. Franklin had previously given birth to eight children.) Difficulty in the procedure was encountered. Dr. Milner contends that the right Fallopian tube was ligated normally but that he could not be certain that the left Fallopian tube had been adequately coagulated, and that he so advised Mrs. Franklin, warning her of the possibility of her becoming pregnant. Some months thereafter Mrs. Franklin became pregnant, but ultimately this pregnancy was aborted.
Plaintiffs contend that Dr. Milner deviated from accepted medical practice by failing "to obtain the informed consent of the patient and advising her of the risk, complications and the failure rate of the proposed procedure," and by failing "to obtain a specimen of the tube to confirm the fact that it had been divided or removed." Plaintiffs also contend that any cautionary information given to Mrs. Franklin was given in the recovery room when she was not fully alert and that confirmatory tests should have been performed in view of the doubtful outcome of the procedure. Moreover, plaintiffs say that Dr. Milner "warranted in his explanation to the *460 plaintiff that it [the procedure] had been successful; that she could throw away her birth control pills and need not fear pregnancy," although he knew that such assurances were false. These contentions were denied by Dr. Milner. He asserts that he also advised Mrs. Franklin of alternate birth control methods.
Dr. Kanter reviewed the hospital chart and sent plaintiffs' attorneys a letter report dated November 7, 1974. Defendants' expert, Dr. David J. Schwartz, reviewed the case and sent defendants' attorneys a letter report dated November 25, 1975. The attorneys exchanged these reports. R. 4:10-2 (d) (1); R. 4:17-4(a).
Dr. Kanter's report noted that he did not find the operative permit in the chart, and he asked if there was a permit (signed by Mrs. Franklin) and did it contain sufficient information for a reasonably informed consent or did it imply, incorrectly, a warranty of success in the performance of the procedure? Dr. Kanter's report also noted "the failure to obtain a specimen which would have indeed confirmed the fact that the left tube had been divided or removed." He also discussed Dr. Milner's reference to having informed the patient of the problem in the recovery room when she was fully alert. He stated his opinion that "no one recovering from an anesthetic in an operative procedure is fully alert for at least eight to twelve hours," and that Dr. Milner "may be assumed to be negligent because he didn't follow this up" and properly counsel the patient on the chance of failure of the left tube ligation. He also suggested that negligence may be found in the failure to try to discover through a further process, a hysterosalpingogram, "whether the tube was indeed nonpatent" so as to warn the patient to exercise birth control or to elect readmission for surgical exploration. Finally, he discussed the failure rate in all sterilization procedures and the need to fully inform a patient before undertaking the operation. He concluded that there "may be a basis for negligence in this case."
*461 The letter of Dr. Schwartz concluded that Dr. Milner did not deviate from accepted medical procedures, was not negligent and breached no warranty. His letter recited a history which differs somewhat from plaintiffs' contentions. The letter stated that Mrs. Franklin was informed at Dr. Milner's office that "the procedure could be done by laparoscopy but that there was a possibility, because of her obesity, that it might not be completed." He also asserted that Dr. Milner discussed the "alternative to this" at that time, and Dr. Schwartz commented on the reason why sterlization by laparoscopy was preferred in this case. He discussed the difficulty encountered during the operative procedure which created doubt that the left Fallopian tube was adequately coagulated. Reportedly this was discussed with Mrs. Franklin in the recovery room when she was "awake and alert" and she was warned of the possibility that she could become pregnant. This discussion, the report states, was repeated again two weeks later and a second operative procedure was offered, a laparotomy, involving opening the abdomen, at which time the tube could definitely be severed. Dr. Milner said that Mrs. Franklin decided to "take her chances on becoming pregnant" since there was a possibility that the procedure performed may have been successful.
After becoming pregnant Mrs. Franklin again saw Dr. Milner and consulted him also after the pregnancy was aborted. Allegedly, she again declined a permanent sterilization procedure and chose to use birth control pills instead. Dr. Schwartz concluded that the failure of the procedure does not reflect any improper management or lack of skill on Dr. Milner's part. He also referred to "well documented records that the patient was informed * * * of the possibility of her getting pregnant * * *." His report also commented on Dr. Kanter's report of November 7. Dr. Schwartz also was unable to find the operative permit on the chart, but he presumed one must exist. He rejected Dr. Kanter's suggestion that a specimen should have been taken, saying it was not an accepted current requirement. He relied on Dr. Milner's *462 statement that Mrs. Franklin was alert and able to comprehend what she was told before being discharged from the hospital, noting that this was a case of out-patient surgery. He also rejected the value of a hysterosalpingogram which Dr. Kanter said could have determined if the tube was nonpatent.
We now reach the critical stage upon which the discovery issue will be decided. Plaintiffs' attorneys sent Dr. Schwartz' report to Dr. Kanter for his comment. Dr. Kanter's comments were contained in one letter dated December 15, 1975, and that letter was accompanied by a letter of transmittal, also dated December 15, 1975. In his letter of transmittal Dr. Kanter briefly stated that the enclosed letter contained his comments on the "deposition [report] which Dr. Schwartz gave to you." It also contains two brief sentences which expressed his opinion on the "crux of the" legal issue in the case and the prospects of success in the event defendants can prove that Mrs. Franklin had been adequately warned of the possible failure of the procedure. In describing the contents in this manner we intend to characterize this brief letter as an expression essentially of a legal opinion on the pivotal role that certain proofs will play in the case. For reasons which will be stated below we conclude that this letter is not discoverable by defendants.
Before discussing the two-page letter dated December 15 we should note that plaintiffs' attorneys properly advised opposing counsel of the existence of these letters, R. 4:17-4(a), contending, however, that they were not discoverable. Thereafter, in January 1976, defense counsel took Dr. Kanter's oral deposition and inquired about the December 15 letters. On the instructions of plaintiff's counsel, Dr. Kanter declined to disclose the contents of these letters except to say, "I merely commented on Dr. Schwartz's remarks" and "compared Dr. Schwartz's comments, which are based on his experience, with what I've experienced."
*463 In the deposition Dr. Kanter testified that his report of November 7, 1974 contained his full opinion and criticisms of Dr. Milner's treatment. Some form of written consent for the procedure had been produced at the deposition, and Dr. Kanter testified that the risks involved in the procedure "may be orally given." Also explored was the question of medical judgment involved in the procedures which he discussed in his November 7 report. He also said, "It comes down to credibility, I guess. * * * The crux of the thing is a matter of credibility. I have only the record to go on."
At oral argument we asked plaintiffs' counsel to identify which sentences in the two-page December 15 letter contained medical facts or opinion, advice on trial strategy or legal opinion. Not seeing the letter is some disadvantage to defense counsel and they must rely upon the good faith and competence of a judge or judges in construing the letter.
The trial judge said that the doctor's letter which was withheld (we assume he referred to the two-page letter of December 15) "set down his impression of the strategy and tactics applicable to trial of the case. * * * Its contents are definitely work product within the scope of `mental impression.'" 139 N.J. Super. at 386-387. He agreed with defendants' contention, however, that our discovery rules require all of this expert's reports to be produced if he is to be used as a witness.
This letter must be examined in detail. As conceded in Dr. Kanter's deposition, the first sentence in the letter is: "The following are my comments on Dr. Schwartz's letter." Defendants must wonder how Dr. Kanter could comment on Dr. Schwartz's report without discussing relevant medical facts or opinions. Certainly Dr. Kanter's letter cannot be said to contain only advice on trial strategy and tactics. We find some comments of a legal nature and some which clearly contain medical opinion. Those that state medical opinions or facts which we find discoverable will be identified rather than quoted where full disclosure involves the risk that the *464 case may be appealed and the Supreme Court may reach a contrary conclusion.
The first sentence in the second paragraph contains Dr. Kanter's opinion of the quality of Dr. Schwartz's resume' of the case. This is not competent evidence; it states a conclusion without any supporting medical data or other facts. The second conjunctive clause refers to the difficulty in the procedure (reported by Dr. Milner) and contains a statement of Dr. Kanter's belief in the truth of that report. We find no competent, discoverable or evidential content in that sentence. The second sentence of the paragraph may be considered essentially legal. It is similar to the testimony given by Dr. Kanter and comments in his report concerning the duty to warn the patient that pregnancy was a possibility, as well as the comment in his deposition as to the "crux of the matter," namely, the issue of credibility. For these reasons we consider the comments to express primarily a legal rather than a medical opinion.
The third paragraph states: "My comments on Dr. Schwartz's comments about my comments are as follows:".
The fourth paragraph is one sentence. It repeats Dr. Kanter's earlier statement that the chart did not contain an operative permit. It also raises a purely legal question concerning defendants' means of proving informed consent.
The fifth paragraph contains two sentences. The first sentence contains essentially medical opinion and is clearly discoverable. It refers to current concepts regarding pathological specimens in performing tubal sterilization by laparoscopic technique. The second sentence is purely legalistic speculation as to the effect that a certain procedure would have had upon defendants' case had it been performed.
At oral argument plaintiffs' attorney consented to the disclosure of the last paragraph on the page and the first sentence on the second page. These state:
In so far as talking to a patient recovering from anesthesia, I strongly dispute Dr. Schwartz's statement that the patient was alert enough. They may be alert enough to walk around and be discharged, *465 but certainly for something as important as this, it would be practically mandatory that 24 hours had elapsed before they discussed the matter with the patient, and probably should have done so in the presence of witnesses.
I have had cases where there was some doubt as to whether the tube had been interrupted and I see no reason why a hysterosalpingogram should not have been done.
The last two sentences in the first paragraph on the second page we consider argumentative, nonmedical comments entirely barren of expert opinion and of no evidential competence. They might suggest a line of inquiry for plaintiffs' counsel to pursue during trial, but cannot lead to discoverable evidence.
The last paragraph is Dr. Kanter's estimate of the prospects of concluding the case without a trial. It expresses a legal thought and repeats an observation made in his deposition that credibility is in issue. The letter also contains usual closing sentiments.
We have previously stated that the short letter of transmittal dated December 15 is not discoverable. We have identified those portions of the two-page letter which we deem discoverable and have suggested reasons why the remaining portions are not discoverable.
Our discovery procedures should be liberally construed to compel production of all relevant, unprivileged information and information that may lead to the discovery of relevant evidence. R. 4:10-2(a).[2] Disclosure is required of *466 inadmissible evidence "if the information sought appears reasonably calculated to lead to the discovery of admissible evidence * * *." Id.; Irval Realty Inc. v. Board of Public Utility Comm'rs, 115 N.J. Super. 338, 346 (App. Div. 1971), aff'd *467 61 N.J. 366 (1972). The portions of the letters which we deem discoverable have been identified above. The balance we consider incompetent, inadmissible and not likely to lead to the discovery of admissible evidence. We reach this conclusion without regard to the fact that substantially all of Dr. Kanter's admissible statements, including his expert *468 opinion, have been revealed in his November 7 letter or in depositions which are expressly allowed by R. 4:10-2(d) (2). For R. 4:10-2(a) provides that it is not ground for objection "that the examining party has knowledge of the matters as to which discovery is sought." In any case, a party should not be compelled to take the deposition of an expert and reasonably compensate the expert as required by R. 4:10-2 (d) (2) if the expert's report containing the desired information must be produced under R. 4:10-2(d) (1) and R. 4:17-4(a).
The remaining question is whether the entire letters of December 15 must be disclosed by virtue of provisions of R. 4:17-4(a) and R. 4:10-2(d) notwithstanding that portions thereof normally would not be discoverable under the general principles stated above.
With respect to an expert who is expected to testify, R. 4:10-2(d) provides that "facts known and opinions held by [such] experts, otherwise discoverable under the provisions of R. 4:10-2(a) and acquired or developed in anticipation of litigation or for trial, may be obtained" through interrogatories. The rule further provides that reports of such expert witnesses must be furnished in accordance with R. 4:17-4(a). (R. 4:10-2(d)(3) provides that a party may discover facts known or opinions held by an expert engaged by another party who is not expected to be a witness at trial only upon a showing of exceptional circumstances which hamper the party seeking discovery in obtaining facts or *469 opinions on the same subject by other means.) The facts known and opinions held by an expert who has made a mental or physical examination of a party pursuant to R. 4:19 may be discovered, whether or not the expert is expected to testify. R. 4:10-2(d).
R. 4:17-4(a) provides in part as follows:
If the copy is a report of an expert witness or a treating physician, it shall be an exact copy of the entire report or reports rendered by him, and the answering party shall certify that the existence of other reports of that expert, either written or oral, are unknown to him and if such become later known or available, he shall serve them promptly on the propounding party * * *.
Defendants contend that the requirement for submission of "an exact copy of the entire report" and all other reports of the expert allows of no exception. They argue that even the "work product" rule embodied in subsection (c) of R. 4:10-2 cannot be invoked by an expert who is expected to testify because subsection (c) is specifically made subject to the provisions of subsection (d) which incorporates the requirements of R. 4:17-4(a).
We do not read these provisions of R. 4:17-4(a) so literally as to disassociate them from the overall purposes and provisions of our discovery practice. R. 4:10-2(d)(1) requires that a party state in answers to interrogatories "the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion * * *." This provision requires disclosure of competent and admissible evidence. Moreover, this provision and the remainder of R. 4:10-2(d) (1), incorporating R. 4: 17-4(a) and requiring production of all the entire reports and a certification that no other reports, written or oral, are known to that party, were intended "to correct abuses which heretofore existed under R.R. 4:25-2 (report of physical and mental examination) * * *." Pressler, Current N.J. Court Rules, Comment to R. 4:17-1 at 577. See Clark v. Fog Contracting Co., 125 N.J. Super. 159 (App. Div.), *470 certif. den. 64 N.J. 319 (1973) in which a proposed expert witness was named in answers to interrogatories but no written report was annexed as requested. The answering party conceded that he received an oral report of the substance of the expert's expected testimony. In enforcing the obligation under R. 4:17-4(a) to furnish subsequently received reports, whether written or oral, the court precluded the expert from testifying. R. 4:17-4(a) was also designed to prevent experts from preparing two reports, one intended for discovery and the other for so-called confidential use. These rules were designed primarily to prevent concealment of any expert information concerning facts and opinions and grounds for opinions "to which the expert is expected to testify * * *." R. 4:10-2(d)(1).
Concealed reports, oral or written, are not the exact problem in this case. Here certain objectionable material consists of comments, questions and suggestions that are not admissible evidence, are not likely to lead to such evidence, and deal generally not as much with medical concepts as with legal views which are beyond the true expertise of Dr. Kanter. As much as subsection (c) of R. 4:10-2 is made subject to subsection (d) of that rule, subsection (d) is made subject to subsection (a) of the rule; and R. 4:10-2(a) limits the scope of discovery to "any matter, not privileged, which is relevant to the * * * pending action * * *", excluding information "inadmissible at the trial" unless the information is likely to lead to the discovery of admissible evidence.
We conclude that certain identified portions of the December 15 two-page letter should be excised and the short letter of the same date may be withheld entirely because the objectionable material does not consist of facts known to Dr. Kanter or opinions held by him which are admissible or are likely to lead to admissible evidence.
We should comment on the problem considered by the trial judge, namely, the use of an expert both as a prospective *471 witness and as a consultant on trial strategy, tactics or other preparations for trial.
Clearly, in some cases an expert may serve an attorney or a party in dual capacities. In State v. Kociolek, 23 N.J. 400, 411-417 (1957), defendant was charged with murder and claimed amnesia for the period in question. His attorneys engaged a psychiatrist, who examined defendant to determine whether a defense of insanity or other mental condition might be invoked. The psychiatrist reached a conclusion unfavorable to defendant and the prosecutor asked for a copy of his findings. The court held that his findings and reports were privileged based upon the psychiatrist's relationship as an agent of the attorneys to whom confidential information had been imparted by defendant. The privilege was not based upon a doctor-patient relationship because the psychiatrist did not examine defendant for the purpose of diagnosis and treatment. The court went on to say:
The privilege extends to the necessary intermediaries and agents [of the attorney] through whom the communications are made. And it includes communications between the attorney and a scientific expert retained to aid in the presentation of the defense, a confidential employment. [at 413, emphasis supplied][3]
R. 4:10-2 provides in general that discovery may be had of all relevant matters "not privileged" R. 4:10-2(c) retains the work-product rule in limited form (see Jenkins v. Rainner, 69 N.J. 50, 54-55 (1976)) for documents prepared in anticipation of litigation or trial by or for a party or his representative, including his attorney, consultant, agent or insurer. But R. 4:10-2(d) is at odds with the concept that, in a civil case, the attorney-client privilege or work-product *472 rule will protect all documents prepared by an expert witness for an attorney on the theory of State v. Kociolek, supra, that experts are agents of parties or their attorneys. Note, "Discovery: New Jersey Work Product Doctrine," 1 Rutgers-Camden L.J. 346, 355-366 (1969). The question is whether written communications from expert witnesses to attorneys may be protected at all without violating the sweeping provisions of R. 4:10-2(d) and R. 4:17-4(a). The trial judge held that no work-product protection could be claimed for the letters in this case because the expert was to be a witness.
It is common for experts to serve a dual role as prospective witnesses and as consultants to attorneys in preparing a case. In other jurisdictions the work-product protection has been preserved for those communications of an expert made in the capacity of an advisor in preparation for trial, although discovery can be had of the knowledge and opinions about which they are prepared to testify. See, for example, State ex rel. Dudek v. Circuit Court for Milwaukee Cty., 34 Wis.2d 559, 150 N.W.2d 387, 407-410 (Sup. Ct. 1967); Scotsman Mfg. Co. v. Superior Court, 242 Cal. App.2d 527, 530-532, 51 Cal. Rptr. 511, 514 (D. Ct. App. 1966); Swartzman v. Superior Court, 231 Cal. App.2d 195, 201-204, 41 Cal. Rptr. 721, 726-727 (D. Ct. App. 1964).
In Swartzman, the court acknowledged that an expert "normally wears two hats," stating:
Consultation between expert and counsel may appropriately be given broad immunity from discovery, both as to expert and as to counsel, because none of the expert's opinion [in advising counsel, educating him on technical aspects and otherwise guiding him in preparing the case], professional though it may be, is relevant evidence in the case. [231 Cal. App.2d at 202, 41 Cal. Rptr. at 726-727]
R. 4:10-2(d) distinguishes between discovery of reports from experts who are prospective witnesses (or examining experts under R. 4:19) and discovery of reports from experts *473 who are not expected to testify. R. 4:17-4(a) may be interpreted so as to require production of the entire report of an expert witness without exception for information that is not admissible evidence, nor likely to lead to admissible evidence and may include advice on trial tactics, although other jurisdictions do not go this far.[4] But this view might compel litigants to employ one expert whose report will be limited by his expectation of testifying and another expert who will serve a more general purpose as a consultant. See Becker, "The Use of Experts in Pretrial Discovery," Using Experts in Civil Cases (M.D. Kraft, ed., 1977), at 25-26. This has obvious disadvantages. On the other hand, encouraging the combination of expert opinion of a proposed witness and tactical advice in one report would complicate the discovery process and unduly involve the judiciary in a unilateral excision of material found objectionable by one party. A further complication is that expert opinion is often a mixture of fact and law. For example, the standard of informed consent is a legal concept that may depend upon expert medical knowledge and practices.
Obviously, the basic concept of work-product  materials and mental impressions obtained by an attorney in preparation for trial (R. 4:10-2(c); see Hickman v. Taylor, 329 U.S. 495, 510-511, 67 S.Ct. 385, 393-394, 91 L.Ed. 451, 462 (1947))  cannot gain for such materials *474 prepared by proposed expert witnesses absolute immunity from disclosure under our rules. Subordinating subsection (c) to subsection (d) of R. 4:10-2 makes this conclusion clear. As broad as our discovery rules are with respect to reports of expert witnesses, however, we conclude that discovery is limited to material which is relevant, admissible or likely to lead to admissible evidence. This is the prevailing policy of discovery and it is embodied in R. 4: 10-2(a). We find no compelling need for discovery of those portions of Dr. Kanter's letters which do not meet this standard.
The order requiring complete discovery is reversed and is modified to conform to this opinion. The case is remanded to the trial court for further proceedings. No costs.
NOTES
[1] Actually, the order referred to one letter only, the trial judge having mistakenly stated that one of the letters in controversy had been produced voluntarily and only one was withheld. 139 N.J. Super. at 386. An earlier letter had been produced but both letters dated December 15, 1975 were withheld, and this appeal proceeded on the assumption that the opinion below requires production of both letters in dispute.
[2] Pertinent excerpts of the two principal rules are:

R. 4:10-2. Discovery
Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
(a) In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence; nor is it ground for objection that the examining party has knowledge of the matters as to which discovery is sought.
(b) Insurance Agreements. * * *
(c) Trial Preparation; Materials. Subject to the provisions of R. 4:10-2(d), a party may obtain discovery of documents and tangible things otherwise discoverable under R. 4:10-2(a) and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.
A party may obtain without the required showing a statement concerning the action or its subject matter previously made by that party. * * *
(d) Trial Preparation; Experts. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of R. 4:10-2(a) and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
(1) A party may through interrogatories require any other party to disclose the names and addresses of each person whom the other party expects to call at trial as an expert witness, including a treating physician who is expected to testify and of an expert who has conducted an examination pursuant to R. 4:19 whether or not he is expected to testify, to state the subject matter on which the expert is expected to testify, to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion, and to furnish, as provided by R. 4:17-4(a), a copy of the report of an expert witness, including a treating physician, and, whether or not he is expected to testify, of an expert who has conducted an examination pursuant to R. 4:19.
(2) Unless the court otherwise orders, an expert whose report is required to be furnished pursuant to subparagraph (1) may be deposed as to his opinions at a time and place convenient for him as provided by R. 4:14-7(b). The party taking the deposition shall pay the expert or treating physician a reasonable fee for his appearance, to be determined by the court if the parties and the expert or treating physician cannot agree on the amount therefor.
(3) A party may discover facts known or opinions held by an expert (other than an expert who has conducted an examination pursuant to R. 4:19) who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial only upon a showing of exceptional circumstances under which it is impractical for the party seeking discovery to obtain facts or opinions on the same subject by other means. If the court permits such discovery, it shall require the payment of the expert's fee provided for by R. 4:10-2 (d)(2), and unless manifest injustice would result, the payment by the party seeking discovery to the other party of a fair portion of the fees and expenses which had been reasonably incurred by him in obtaining facts and opinions from the expert.
R. 4:17-4. Form, Service and Time of Answers
(a) Form of Answers; By Whom Answered. Interrogatories shall be answered in writing under oath by the party upon whom served, if an individual, or, if a public or private corporation, partnership or association, or governmental agency, by an officer or agent. The party shall furnish all information available to the party, his agents, employees, and attorneys. The person answering the interrogatories shall designate which of such information is not within his personal knowledge and as to that information shall state the name and address of every person from whom it was received, or, if the source of the information is documentary, a full description, including the location, thereof. Each question shall be answered separately, fully and responsively in the space following the question or if insufficient, on additional pages or retyped pages repeating each interrogatory in full followed by the answer, in such manner that the final document shall have each interrogatory immediately succeeded by the separate answer. Except as otherwise provided by paragraph (d) of this rule, if in any interrogatory a copy of a paper is requested, the copy shall be annexed to the answer. If the copy is a report of an expert witness or a treating physician, it shall be an exact copy of the entire report or reports rendered by him, and the answering party shall certify that the existence of other reports of that expert, either written or oral, are unknown to him and if such become later known or available, he shall serve them promptly on the propounding party, but in no case later than the time provided by R. 4:17-7. [Emphasis supplied]
[3] A contrary result was reached in State v. Mingo, 143 N.J. Super. 411, 413 (App. Div. 1976), with respect to handwriting examplars furnished to an expert engaged by the defense, distinguishing State v. Kociolek.
[4] Rule 26(b) (4) (A) of the Federal Rules of Civil Procedure provides for discovery through interrogatories of "the substance of facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." The rule does not mention expert reports, but the court, upon motion, "may order further discovery by other means * * *." The New York rule generally precludes discovery of experts' opinions and reports prepared for litigation (C.P.L.R. § 3101(d) although C.P.L.R. § 3121 (b) provides for the exchange of reports of a physical or mental examination when a person has submitted to such examination on demand of a party in cases in which the person's mental or physical condition or blood relationship is in dispute.