[Civ. No. 37904. Second Dist., Div. Two. Jan. 14, 1972.]

COUNTY OF LOS ANGELES, Plaintiff and Respondent, v.
LOTTA KLING et al., Defendants and Appellants;
TRUMAN TAYLOR et al., Defendants and Respondents.

**COUNSEL**

O'Neill & Huxtable and Francis H. O'Neill for Defendants and Appellants.

John D. Maharg, County Counsel, and Philip S. Miller, Deputy County Counsel, for Plaintiff and Respondent.

Thomas G. Baggot and Irwin M. Friedman for Defendants and Respondents.

**OPINION**

**FLEMING, J.**—Eminent domain proceeding involving the County of Los Angeles, the condemning agency; the Klings, owners of the condemned building and land; and the Taylors, lessees of the condemned building. Two trials were held: a nonjury trial to determine what equipment installed in the building was compensable in eminent domain, and what interests the Klings and the Taylors had in the property and equipment; and a jury trial to determine the value of the condemned property and equipment.

*Nonjury Trial*

The Klings constructed a cement block building on property on Willow Street in Long Beach, and in August 1963 they leased the building to the Taylors for five years "to continue five more years on option of lessees." The lease provided that "all alterations, additions, and improvements made in and to the premises shall, unless otherwise provided by agreement, be the property of the lessor, and shall remain upon and be surrendered with the premises." In October 1963 the Taylors opened a laundromat in the building, and for that purpose they installed washers, dryers, hot water heaters and tanks, a water softener, carpentry, ventilation, plumbing, gas, and electrical equipment, vending machines, and electrical signs.

The lease was to expire in August 1968. The Taylors discussed renewal of the lease with the Klings in early 1968. Mrs. Kling, with whom the Taylors had been dealing, then left the country for some period of time. In October 1968 the Taylors sent a new lease to Mrs. Kling which contained the same provisions as the old one but was to run "for five (5) years and will continue five (5) more years on option of lessees." Mrs. Kling returned the new lease unsigned, saying she could not sign it because the county was going to take the land. The county condemned the property on 28 October 1968 as part of a plan to widen Willow Street. The Taylors paid rent through February 1969 and operated their laundromat until the county took possession of the building on 31 January 1969.

The trial court found that the Taylors had exercised their option for another five-year lease, that the plumbing, ventilation, lighting, electrical and carpentry installations and certain laundromat equipment were part of the realty for purposes of eminent domain and were to be paid for by the county, that the Taylors were entitled to receive the compensation for these installations and equipment.

*Jury Trial*

The county and the Taylors stipulated that the value of the installations was $6,200, and this amount, together with a sum representing the value of the laundromat equipment was awarded to the Taylors. The county appraiser testified the value of the land and building was $46,600. Mr. Taylor testified that the value of his leasehold interest in the building was $19,000. The trial court prohibited the Klings from presenting any valuation evidence because during pretrial conferences they had failed to exchange with the county appraisal reports or statements of intended testimony on value. Because the valuation evidence was uncontradicted, the trial court directed

the jury to find the value of the land and building as $46,600, of which the Klings were entitled to $27,600 and the Taylors $19,000.

*Issues*

The Klings appeal the judgment. They contend (1) they were entitled to compensation for the installations, (2) the Taylors had not renewed the lease, (3) Mrs. Kling should have been allowed to testify on valuation, (4) the trial court should not have directed verdicts, (5) they were denied due process of law because they were represented by ineffective counsel.

### 1. *The Installations*

■ A lessee is entitled to compensation for fixtures, structures, or other improvements installed or erected by him upon property taken under eminent domain if, as against the lessor, he has the right to remove such improvements prior to or upon expiration of his term. (*S. F. Bay Area Rapid Transit Dist.* v. *Central Valley Nat. Bank,* 265 Cal.App.2d 551, 554 [71 Cal.Rptr. 430].)

■ The Klings contend they, not the Taylors, are entitled to compensation for the carpentry, lighting, plumbing, electrical, and ventilation installations put in by the Taylors and valued at $6,200. The Klings argue that the lease provided that "all alterations, additions and improvements made in and to the premises shall, unless otherwise provided by agreement, be the property of the lessor . . ." and that the removal of the installations would have damaged or destroyed the building.

The Klings in effect ask us to reweigh the evidence, which it is not our province to do. (*Berven Carpets Corp.* v. *Davis,* 210 Cal.App.2d 206, 214 [26 Cal.Rptr. 513].) The trial court specifically found that the installations were "not alterations, additions or improvements to the premises within the meaning of" the lease provisions. The record does not support the Klings' allegation that removal of the installations would have damaged or destroyed the building. The nature of the installations, the construction of the building, the prospective duration of the term of the lease, provide substantial evidence to support the trial court's conclusion that the Taylors were entitled to receive the $6,200 compensation for the installations in the building.

### 2. *Renewal of the Lease*

■ The Klings next contend that the Taylors had not exercised their option to renew their lease for five years. They argue that the Taylors' offer to the Klings of a new five-year lease with an additional five-year option was

not an exercise of the option in the old lease but a repudiation of the old lease, and that the counteroffer for a new lease had never been accepted.

Again the Klings ask us to reweigh the evidence, which we decline to do because the record contains substantial evidence to support the finding that the Taylors exercised their option to renew their lease. ■ If a lease does not contain provision as to the manner and time in which an option is to be exercised, the tenant may exercise his option before the expiration of the original term by a course of conduct indicating his election to renew. (*Cicinelli* v. *Iwasaki,* 170 Cal.App.2d 58, 67-68 [338 P.2d 1005].) ■ The Taylors' conduct clearly indicated an intent to exercise their option. The lease was to expire in August 1968. Early in 1968 the Taylors indicated their desire to renew the lease. They stayed in possession after the original term expired and paid the rent without objection from the Klings. The Taylors did offer a new written lease to the Klings in October 1968, but the trial court reasonably could have inferred that this new lease was intended as a proposed modification to an existing lease which had already been renewed for a five-year period.

### 3. *Exclusion of Valuation Evidence*

■ During the jury trial on valuation of the condemned property, the Klings sought to call Mrs. Kling as a witness to testify to the market value of the condemned property and the market value of the Taylors' leasehold interest in that property. The trial court refused to allow her to testify to either opinion, because the Klings had failed to exchange appraisal reports or statements of intended testimony on valuation during pretrial proceedings. A pretrial order provided: "If any party intends to have an owner . . . testify in this case with respect to valuation, such party shall . . . file with the court [on or before five days before the final pretrial] . . . the name of such person, his opinion as to valuation, and all factual data . . . upon which such opinion is based . . . ."

The final pretrial conference order provided: "The other parties [the Klings] have not submitted valuation data for purpose of exchange and are therefore precluded from offering any evidence with respect thereto."

The Klings contend that it was erroneous for the trial court to exclude Mrs. Kling's testimony on the grounds stated. We agree. Although we approve of compulsory mutual exchange of appraisal data in eminent domain cases (*Swartzman* v. *Superior Court,* 231 Cal.App.2d 195 [41 Cal.Rptr. 721]), in this instance we do not believe prejudice would have resulted from an amendment to the pretrial order which would have allowed the owner to give her opinion on value. From the beginning of the trial it was clear that Mrs. Kling wanted to testify. The Klings' answer to the county's

complaint in eminent domain set forth their opinion on the value of the property, and but for the provisions of the pretrial order Mrs. Kling would have been entitled as an owner to testify to the value of her property. (Evid. Code, § 813.) The first pretrial order stated that additional information could be received in evidence if a party showed "good cause to the court." In this instance we think the trial court should have exercised its discretion to permit Mrs. Kling to testify to the value of her property and the value of the Taylors' leasehold interest in that property.

Nevertheless, we conclude that as to the county the refusal to allow Mrs. Kling to testify was nonprejudicial error. Mrs. Kling would have testified that her property was worth $90,000, an opinion based on a recent offer for her property. But an offer is not a proper basis for an opinion as to the value of property (Evid. Code, § 822, subd. (b)), and an opinion founded on incompetent matter may be rejected. (*Sacramento & San Joaquin Drainage Dist.* v. *Goehring,* 13 Cal.App.3d 58, 65 [91 Cal.Rptr. 375]; *Young* v. *Bates Valve Bag Corp.,* 52 Cal.App.2d 86, 96 [125 P.2d 840].) Thus the principal basis to support Mrs. Kling's opinion on value would not have been available for admission in evidence.

No similar infirmity attaches to the proposed testimony of Mrs. Kling on the value of the Taylors' leasehold interest, and in our view the court's refusal to allow her to testify on that value was clearly prejudicial. The county's appraiser valued the land and building in part on the assumption that the fair rental value of the property was $425 per month, but Mr. Taylor valued his leasehold interest on the assumption that the fair rental value of the property was $700 per month. Both estimates could not be correct, yet the Klings' interest was determined by subtracting Mr. Taylor's valuation from the county's appraiser's valuation. The Klings were thus caught in an unfair squeeze on both sides and were not allowed to present their own position. They are entitled to a new trial on the issue of the valuation of the Taylors' leasehold interest.

### 4. *Directed Verdicts*

The Klings contend that the trial court erred in directing verdicts on the valuation issues. As to the Taylors, we have already concluded that the Klings are entitled to a new trial on the issue of valuation. As to the county, it was not error to direct a verdict on the basis of the county appraiser's testimony. His was the only competent testimony before the court, and under those circumstances the jury could not properly have set the value of the land and building at other than the figure supported by the expert's testimony. (*Ventura County Flood Control Dist.* v. *Security First Nat. Bank,* 15 Cal.App.3d 996, 1002 [93 Cal.Rptr. 653].)

### 5. Ineffective Counsel

█ The Klings finally contend that they were denied due process of law because they were represented by ineffective counsel. The Klings rely on cases from the criminal law (e.g., *People* v. *Ibarra,* 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487]). We find no authority to expand the right to effective counsel to eminent domain proceedings. At most the Klings have suffered a monetary loss, for which they have adequate recourse in a malpractice action for damages against assertedly incompetent counsel.

The judgment fixing the amount of compensation payable by the County of Los Angeles is affirmed. The judgment allocating this amount between the Klings and the Taylors on the basis of leasehold valuation is reversed, and the cause is remanded to the trial court for a new trial on the issue of leasehold valuation.

Roth, P. J., and Herndon, J., concurred.

Petitions for a rehearing were denied February 8, 1972, and the petition of the defendants and respondents for a hearing by the Supreme Court was denied March 16, 1972.