[No. G033970. Fourth Dist., Div. Three. Mar. 4, 2005.]

THOMAS HAFEN et al., Plaintiffs and Respondents, v.
COUNTY OF ORANGE et al., Defendants and Appellants.

134

Counsel

Benjamin P. de Mayo, County Counsel, Jeffrey M. Richard, Deputy County Counsel; Koeller, Nebecker, Carlson & Haluck, William L. Haluck and Sonia Patel for Defendants and Appellants.

Newmeyer & Dillon, Karen J. Lee, Joseph A. Ferrentino and Charles S. Krolikowski for Plaintiffs and Respondents.

**OPINION**

**IKOLA, J.**—Appellants, County of Orange, its Planning and Development Services Department, and Frank McGill (collectively, the County) appeal from the superior court's judgment and writ of mandate compelling the County to issue a grading permit allowing respondents, Thomas Hafen, Jack Hafen, and their trust, World Ventures (collectively, Hafen), to rough grade four parcels of real property in Orange County's Foothill/Trabuco Specific Plan (FTSP) area. The County argues the FTSP, adopted by the County's board of supervisors in December 1991, embodies the applicable zoning and grading regulations, under which the agency properly insisted Hafen obtain a site plan/site development permit (SDP) before being issued a grading permit. The County further asserts that, contrary to the court's express finding, Hafen has no vested right that would exempt or excuse him from compliance with the FTSP's requirement.

The County is correct. For reasons we now explain, we reverse the judgment and remand to the trial court with directions to deny the writ petition.

## FACTS

*Background*

The subject property consists of 9.277 acres of unimproved land located at the intersection of Hamilton Trail and Wunder Trail in the unincorporated area of Orange County known as South County. In 1989, then-owner Terry Parkin proposed the property be subdivided into four rural residential hillside estate parcels, each a minimum of two acres. Parkin began processing a tentative parcel map (TPM) with the County. Parkin's TPM 89-234 showed the four proposed parcels, as well as the parameters of rough contour grading, retaining walls, pad elevations, road and driveway locations, and earth grading quantities stated in cubic yards for each of the four parcels.

On August 22, 1990, the County notified Parkin it had "approved [TPM 89-234] subject . . . to the findings and conditions as stated in the attached final tentative parcel map report." The TPM report, in turn, noted the property was encompassed within "[FTSP] Interim Guidelines," but the project as proposed was "exempt from the interim guidelines of the [FTSP]." The TPM report contained 37 conditions, most of them pertaining to requirements for issuance of grading permits. Among those are three of relevance here: condition No. 18, providing, "Prior to the issuance of a grading permit," if

there appears to be "significant deviation from the proposed grading illustrated on the approved [TPM]" in certain respects, the plan will be subject to further review by the subdivision committee "for a finding of substantial conformance." If such a finding is not achieved, the developer, depending on the circumstances, will be required to process a revised tentative tract map, a new TPM, or an SDP application; condition No. 32, stating, "Prior to the issuance of any grading and building permits for each individual parcel, in addition to the private travelway/retaining walls along the private travelway, the owner/subdivider shall submit a site development permit [SDP] in accordance with the provisions of Section 7-9-150 of the Orange County Zoning Code,[1] and a note to that effect shall be placed on the final parcel map"; and condition No. 36, stating, "Prior to the issuance of a grading or building permit on each parcel, the developer shall submit an application for [an SDP], in accordance with the requirements set forth in the Zoning Code Section 7-9-150, for review and approval by the Manager, Current Planning, in consultation with the Manager, Advance Planning. Further, a note to this effect shall be lettered on the final parcel map."[2] (Underscoring omitted.) The County's notification of approval of TPM 89-234 further advised Parkin, "The conditional approval of this tentative parcel map does not create the parcels shown on the map. State and County laws require that a parcel map prepared by a registered civil engineer authorized to practice surveying, or licensed land surveyor, and substantially in compliance with the map and conditions of approval shall be recorded prior to the expiration date. Failure to record a parcel map by the expiration date shall render this conditional approval null and void."

In December 1991, 16 months after the County conditionally approved Parkin's TPM, the County Board of Supervisors adopted the FTSP, which by its own terms expressly rescinded the interim guidelines. Thus, the provision of the original TPM exempting Parkin from compliance with the FTSP interim guidelines became moot.

---

[1] All further zoning code references are to the Orange County Zoning Code.

[2] Zoning Code section 7-9-150.1(d) defines an SDP as "a precise plan of development [which] shall include the same elements" as a use permit. The requisite elements include "(1) A description of the use(s) and operating characteristics. [¶] (2) A plot plan showing the location of all uses. [¶] (3) Supplementary exhibits, as necessary, to show other information which may be required such as building elevations, landscaping, and grading. [¶] (4) Conditions of approval." (Zoning Code, § 7-9-150.1(a).) The code further provides that an "appropriate approving authority" issuing a discretionary permit, may impose "more restrictive site development standards than stated in a zoning ordinance . . . ." (Zoning Code, § 7-9-150.1(a).)

*The FTSP*

The FTSP area encompasses some 6,500 acres in the foothills of the Santa Ana Mountains. The title page of the FTSP states: "The accompanying text and Land Use Districts map constitute the land use regulations under which development will be governed for the area hereinafter to be referred to as the Foothill/Trabuco Specific Plan. The properties involved [including Parkin's] were placed in the 'Specific Plan' Zoning District by Ordinance Number 3851 adopted by the Orange County Board of Supervisors on December 10, 1991." The FTSP's stated purpose is "to set forth goals, policies, land use district regulations, development guidelines, and implementation programs in order to preserve the area's rural character and to guide future development in the Foothill/Trabuco area." The FTSP further states, "Unless otherwise provided for within this document, all future development in the Specific Plan Area must be found consistent with the Specific Plan Components, the Land Use District Regulations and the Development and Design Guidelines."

The FTSP provides, "The [FTSP] Land Use Regulations are adopted per Orange County Zoning Code section 7-9-156 for the purpose of promoting the health, safety and general welfare of the existing and future residents of the Specific Plan Area, as well as the residents of Orange County overall. More specifically, these regulations are intended to provide the standards, criteria and procedures necessary to achieve the Goals and Objectives of the [FTSP] . . . ." Zoning Code section 7-9-156.2, subdivision (c), in turn, provides in pertinent part, "Adoption of a specific plan ordinance shall also include adoption of an appropriate zoning district map. The zoning district map shall not indicate zoning for the area within the specific plan but shall show the letter S within a circle. Thereafter, *all land use, development and improvements shall conform to the provisions of the adopted specific plan.*" (Italics added.) In addition, Zoning Code section 7-9-139, subdivision (a) mandates, "*Grading and excavation regulations adopted in a planned community text or a specific plan shall supercede this section.*" (Italics added.)

The information sheet received by applicants for entitlements within the FTSP provides: "The Specific Plan was adopted by the Orange County Board of Supervisors . . . as the planning and zoning document for the Foothill/Trabuco area. The goal of the Plan is to preserve the rural character and unique natural resources of the area while allowing landowners a reasonable opportunity to develop their properties." The document emphasizes the FTSP's grading requirements, noting they "are designed to minimize landform alteration," and advising, "*All grading activities must first have an approved site development permit* even through [*sic*] a grading permit may not be required." (Italics added.)

Consistent with that advisement, the stated goals of the FTSP include, inter alia, "a . . . To preserve the rural character of the area and provide a buffer between urban development and the Cleveland National Forest. [¶] b . . . To preserve significant landform, biological and scenic resources. [¶] c . . . To ensure at least some development potential on each individual property." Likewise, the FTSP contains detailed objectives, such as, "[m]inimiz[ing] the intrusion of development and landform alterations within the viewsheds of LiveOak/Trabuco Canyon Road and Santiago Canyon Road without preclud-ing development which blends into the natural terrain and does not require excessive landform alteration"; "[p]reserv[ing] significant landform features, including major ridgelines and rock outcroppings, while allow[ing] limited development on minor ridgelines provided the development blends into the natural terrain and does not require excessive landform alteration"; and "[p]reserv[ing] significant biological resources . . . ." Further, the Develop-ment Potential section of the FTSP states that development on hillsides and minor ridgelines will be allowed "provided grading for the structures and building pads is limited."

The goals and objectives of the FTSP are implemented through substantive and procedural requirements and regulations, including the SDP process that must precede grading in the FTSP area. Of particular relevance here is the land use regulation the superior court erroneously allowed Hafen to bypass. It is set forth in part III, section C-6.1, and it provides, "Grading shall be permitted within the Specific Plan Area *only upon approval of a site development permit* or use permit by the Planning Commission. *No grading permits shall be issued without the approval of a precise plan of development, i.e., site development permit or use permit.*"[3] (Italics added.)

As expressly authorized in Zoning Code section 7-9-150 (see fn. 2, *ante*), the FTSP sets forth requirements far more restrictive than the code itself for approval of an SDP prior to the issuance of a grading permit. For instance, submissions must include a preliminary grading plan delineating existing and proposed graded contour elevations, the location and elevation of all pro-posed building pads, access roads, and driveways, including percent of

---

[3] Hafen's parcels are also located within the Trabuco Canyon Residential (TCR) District, separately defined within the FTSP. Parcels in the TCR District are subject not only to the FTSP's general SDP requirement, but also to rules specific to the TCR. The purpose of the TCR regulations "is to provide for the development and maintenance of low density, single-family residential development in a manner that is rural in character and compatible with areas of steep to gently sloping terrain and significant biological resources." The objective of the rules is "to encourage innovative hillside community design by allowing residential development which is sensitive to the terrain and natural resources." The TCR regulations impose page after page of special restrictions on grading within the district.

grades, a separate grading plan for the roads and driveways and another for the building pad, including depiction of cut and fill areas and total grading volumes, a slope analysis depicting separately those slopes of varying categories of degree, and other specific information.

Finally, a supplement to the FTSP recites an impressive list of development and design guidelines, including highly specific ones for grading. The guidelines are intended, in part, "to preclude conventional solutions to hillside development, including large-scale, mass grading and creation of large, flat residential building pads typical of flatland development." Moreover, although the development and design guidelines "are not regulatory," all development proposals, except for exclusions not applicable here, must be presented for "review[] by the Planning Commission for a determination of consistency with the Guidelines." Clearly, grading issues are at the very heart of the FTSP, its environmental and aesthetic concerns, its substantive and procedural regulations, and its design guidelines.

*Post-FTSP Events*

In June 1992, Parkin submitted a request to extend by three years the time within which to record TPM 89-234.[4] The County's subdivision committee approved the extension, but only after amending the final TPM report, stating it was subject to certain conditions. Condition No. 36 was revised, eliminating the language relating to Zoning Code section 7-9-150's requirement for an SDP, and replacing it with rules under the FTSP, as follows: "Prior to the issuance of a grading or building permit on each parcel, the developer shall obtain an approved site plan in accordance with the requirements set forth in the Foothill/Trabuco Specific Plan. Further, a note to this effect shall be lettered on the final parcel map." (Underscoring omitted.) The chief of the tentative map section certified that the extended TPM 89-234 was approved subject to the stated conditions.

The TPM and report were respectively extended and amended in later years by operation of law and by action of the subdivision committee. On July 28, 1998, at Parkin's request, the TPM was extended for two additional years, until August 22, 2000. As in prior instances, the County's notification letter again advised Parkin the conditional approval "does not create the parcels shown on the map. State and County laws require that a licensed land

---

[4] Absent recordation, the TPM would have expired on August 22, 1992. In relevant part, Government Code section 66463.5 provides, "(a) When a tentative map is required, an approved or conditionally approved tentative map shall expire 24 months after its approval or conditional approval, or after any additional period of time as may be prescribed by local ordinance, not to exceed an additional 12 months."

All further statutory references are to the Government Code, unless otherwise stated.

surveyor or a registered civil engineer authorized to practice land surveying prepare a parcel map which is substantially in compliance with the tentative parcel map and conditions of approval and record it prior to the expiration date." The final TPM report, as amended August 5, 1992, noted the applicable zoning for the proposed parcels was within the FTSP.

*Events Leading to Hafen's Action*

Hafen bought the property from Parkin in April 2000. On August 2, 2000, Hafen's civil engineer, George Polycrates, who had also served Parkin over the years, submitted an "Applicant's Information Sheet for a Building/Grading Permit," stating Hafen sought a permit to do "rough grading (residential)." On the County's "Grading Permit Land Use Approval Worksheet," signed by Polycrates, was a typewritten description showing the application was for "PRELIMINARY GRADING FOR PARCELS 1 THRU 4 AND ROAD." The form further specified as additional items for completion by the applicant: "2. COMPLIANCE WITH CONDITIONS OF RELATED PLANNING APP[LICATION]: IN ACCORDANCE WITH THE REGULA-TIONS OF THE FOOTHILL TRABUCO SPECIFIC PLAN, APPLICANT REQUIRED TO PROCESS SITE PLAN [SDP]," and "6. APPLICANT NEEDS TO SUBMIT SITE PLAN (P.A.) IN ACCORDANCE WITH THE REGULATIONS OF THE [FTSP], COMPLY WITH CONDITIONS OF SITE PLAN AND RECORD TPM 89-234."

Five days later, on August 7, 2000, Hafen applied for approval of an SDP under the FTSP, and submitted an "Environmental Information" document on which Polycrates acknowledged that the required governmental approvals for the proposed rough grading project were "Initial study, Area plan, [and SDP]." While Hafen continued with his efforts to obtain a grading permit, he also processed the final parcel map for the County's approval and recorded it on December 20, 2000. As required by the final TPM report, the final parcel map referred to conditions, including, "4. For each parcel the developer shall obtain an approved site plan [SDP], in accordance with the requirements set forth in the [FTSP]."

In July 2001, Polycrates wrote to Frank McGill of the County's Planning and Development Services Department, on the subject of the SDP, for the first time expressing his belief there was no need for a "discretionary permit," i.e., an SDP, prior to rough grading, and requesting that the department "clear our project so we can proceed and get the [grading] permit." Polycrates stated his position as follows: "TPM 89-234 was originally approved on August 22, 1990 and the original conditions were revised and updated on August 5, 1992

to conform to the [FTSP] which was adopted December 1991. The approval of our Tentative Map establishes that our design depicted on that map was approved and accepted by the Planning Department . . . . During the process of approval of the Tentative we went through the site reviews, the proposed design was analyzed by all the departments and all unanimously approved our design. We have not deviated substantially from the approved Tentative so we see no basis for denying us a permit to proceed with currently bonded construction plans." Polycrates was alluding to the approved TPM's Condition No. 18 (summarized at pp. 135–136, *ante*), contending by reverse implication that a grading permit will issue without an SDP if the proposed grading substantially conforms to the grading illustration on the tentative tract map.

Polycrates also contended rough grading of the property did not trigger the SDP requirement because finished grading might be required when the individual lots were developed. Since that grading might differ from the rough grading as illustrated in the preliminary drawing on the approved original TPM, Hafen would need an SDP under condition No. 18 only when the four parcels were individually prepared. He further argued that conditions Nos. 32 and 66 requiring an SDP, the former under Zoning Code section 7-9-150, the latter under the FTSP, referred to individual lots, not to the whole property, i.e., "Prior to the issuance of any grading and building permits for *each individual parcel*" (condition No. 32, italics added), and "Prior to the issuance of a grading or building permit on *each parcel*." (Condition No. 36, italics added.) This language, applied literally, meant grading was allowed without the need for an SDP as long as the entire property was graded at one time. Finally, alluding to another FTSP regulation, Polycrates added, "We have four legal lots and no one has the power to tell us that these lots cannot be developed unless there are *extreme* public health and safety concerns . . . . We made an agreement with the government."

The line in the sand was drawn. Hafen stood firm, and so did the County, insisting Hafen needed to comply with the FTSP's overall requirement that *any* grading be preceded by an SDP. After extended haggling and an attempt at mediation, with no resolution in sight, Hafen turned to the court for intervention.

*The Petition for Writ of Mandate and Complaint*

In January 2003, Hafen filed his verified petition for writ of mandate and complaint for injunctive and declaratory relief, in which he alleged, "On or about August 5, 1992, the original conditions of approval of TPM 89-234 were revised and updated to conform to the Foothill/Trabuco Specific Plan that had been adopted in December 1991 and the time period during which the Map would remain valid was extended as conditioned." He further

alleged the County had a ministerial duty to issue a grading permit, and he convinced the court he was right.

On April 27, 2004, judgment was entered granting a peremptory writ of mandate "commanding [the County] to set aside [its] decision to deny [Hafen] the rough grading permit and directing [the County] to issue the rough grading permit in accordance with [the] grading shown on the tentative map." In its minute order expressly serving as the statement of decision, the court found the County had failed to prove there was anything discretionary about grading permits following approval of a TPM, and the issuance of the permit was a purely ministerial act which the County was compelled to perform. As particularly germane to the discussion which follows and our disposition of the case, the court concluded, "The County cannot use the 1991 FTSP to impose new conditions on the project that had not been imposed on the tentative map if the project is in substantial compliance with the tentative map." The requirement that Hafen obtain an SDP before issuance of a rough grading permit was one such impermissible new condition. Citing *Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160 [52 Cal.Rptr.2d 518], the court found the County's initial approval of the TPM, prior to adoption of the FTSP, gave Hafen "certain vested rights as to the approval of the final map." It found no proof the FTSP constituted a zoning ordinance that would permit the County to impose conditions "added after the approval of the tentative map." That being the case, Hafen's right to grade the property without obtaining an SDP could not be denied.

## DISCUSSION

Although in more than 150 pages of briefing the parties present a dizzying array of arguments to justify reversal or affirmance of the judgment, as the respective case may be, the straightforward law applicable to the facts requires little discussion.

■ We begin with the fundamental rule in California that even after a final subdivision map has been approved, zoning may be changed in a way that affects or restricts use of the property. In *Avco Community Developers, Inc. v. South Coast Regional Com.* (1976) 17 Cal.3d 785 [132 Cal.Rptr. 386, 553 P.2d 546] (*Avco*), our Supreme Court was "confronted with the apparently irreconcilable conflict between the interests of a land developer who seeks to avoid compliance with a recently enacted law regulating its project, and the interest of the public in assuring development of the property in a manner consistent with the requirements of current law." (*Id.* at p. 788.)
■ Citing the established principle that "a builder must comply with the laws which are in effect at the time a building permit is issued, including the

laws which were enacted after application for the permit" (*id.* at p. 795), and noting it was "beyond question that a landowner has no vested right in existing or anticipated zoning" (*id.* at p. 796), the *Avco* court concluded a public entity may enforce changes in zoning regulations notwithstanding prior subdivision approval unless the owner or developer (1) has obtained a building permit for an identifiable structure, and (2) has performed substantial work in reliance thereon. (*Ibid., passim.*)

Hafen does not claim to have done either, thus the exception does not apply. Under *Avco,* no vested rights stand in the way of the County's power to enforce changes in zoning regulations that occurred after the approval of TPM 89-234.

Does the FTSP encompass changes in zoning regulations applicable to Hafen's property, which is located within the FTSP specific plan area? Yes, and the court erred in finding the County had not proved the predicate. Zoning Code section 7-9-156.2, subdivision (c), provides in pertinent part: "Adoption of a specific plan ordinance shall also include adoption of an appropriate zoning district map. The zoning district map shall not indicate zoning for the area within the specific plan but shall show the letter S within a circle. Thereafter, *all land use, development and improvements shall conform to the provisions of the adopted specific plan.*" (Italics added.) Even more notably, Zoning Code section 7-9-139, entitled "**Grading and Excavation,**" provides, in subdivision (a): "Grading and excavation regulations *adopted in a . . . specific plan shall supercede this section.*" (Italics added.) The Zoning Code itself placed the FTSP at the top of the zoning pyramid.

Does the FTSP set forth superseding grading regulations? Yes. Part III, section C-6.1 provides: "**Grading**: Grading shall be permitted within the Specific Plan Area *only upon approval of a site development permit . . .* by the Planning Commission. *No grading permits shall be issued without the approval of a precise plan of development, i.e., site development permit or use permit.*" (Italics added.)

Do the conditions imposed by the subdivision committee requiring an SDP prior to obtaining a grading permit for each individual parcel displace, supplant, or otherwise invalidate the FTSP regulation making an SDP a condition for obtaining *any* grading permit? No. The conditions *may* impose additional obligations on Hafen (that question is not before us), but the Zoning Code holds the grading trump card, and Zoning Code section 7-9-139 has passed that card to the FTSP.

Additionally, as a zoning regulation, the FTSP, including part III, section C-6.1, constitutes an exception to section 65961 which, in a nutshell,

prohibits a local government, during the five-year period after a final parcel map is filed, from imposing a condition on the issuance of a permit that could have been imposed, but was not, as a condition to approval of the tentative map.[5] (See § 65961, subd. (c) [the provisions of the statute do not prohibit a county from imposing conditions to "[a]ssur[e] compliance with the applicable zoning ordinance"].) The court erred in finding to the contrary.

■ Consequently, Hafen's property, located within the FTSP area, is not exempt from, but is subject to zoning changes occurring after the approval of TPM 89-234, specifically the requirement set forth in part III, section C-6.1, that Hafen obtain an SDP prior to obtaining a permit to rough grade the property.

Neither *City of West Hollywood v. Beverly Towers, Inc.* (1991) 52 Cal.3d 1184 [278 Cal.Rptr. 375, 805 P.2d 329] (*City of West Hollywood*) nor *El Patio v. Permanent Rent Control Bd.* (1980) 110 Cal.App.3d 915 [168 Cal.Rptr. 276] (*El Patio*), cited by Hafen, changes the *Avco* rule that no vested rights inhere in a development unless a valid building permit is issued and reliance on the permit occurs. Both cases involve condominium conversions for which no further construction was contemplated. Indeed, the *El Patio* decision cautions, "Nothing herein should be construed as a determination that the approval of a tentative map would allow a property owner to proceed without obtaining other permits which the City might impose if it were not relying upon the Subdivision Map Act." (*El Patio v. Permanent Rent Control Bd., supra,* 110 Cal.App.3d at p. 927.) And in *City of West Hollywood*, our Supreme Court notes, "Nor are we confronted by the same policy consideration that inspired the *Avco* decision. In that case we were concerned that to grant a developer a vested right to proceed on issuance of a subdivision map, or any other preliminary approval, would impair the government's right to control land use policy by impressing lots previously subdivided—but on which no building had been constructed—with an 'exemption of indeterminate duration from the requirements of any future zoning laws.' " (*City of West Hollywood, supra,* 52 Cal.3d at pp. 1192–1193.)

---

[5] Section 65961 provides, in pertinent part: "Notwithstanding any other provision of law, upon approval or conditional approval of a tentative map for a subdivision of single- or multiple-family residential units, or upon recordation of a parcel map for such a subdivision for which no tentative map was required, during the five year period following recordation of the final map or parcel map for the subdivision, a city, county, or city and county shall not require as a condition to the issuance of any building permit or equivalent permit for such single- or multiple-family residential units, conformance with or the performance of any conditions that the city or county could have lawfully imposed as a condition to the previously approved tentative or parcel map. Nor shall a city, county, or city and county withhold or refuse to issue a building permit or equivalent permit for failure to conform with or perform any conditions that the city, county, or city and county could have lawfully imposed as a condition to the previously approved tentative or parcel map."

Hafen argues he will be required to undertake an SDP in due course, when each of the four parcels is individually graded. Whether the SDP approval as a condition to issuance of a rough grading permit will satisfy the conditions imposed by the subdivision committee for grading of each individual parcel is not before us. We decide only that the subdivision committee's conditions do not supplant the FTSP's overall requirement for an SDP, as set forth in part III, section C-6.1.

Hafen and the court both mistakenly relied on section 66474.1 and *Beck Development Co. v. Southern Pacific Transportation Co., supra*, 44 Cal.App.4th 1160, as precluding the County from enforcing the FTSP. Section 66474.1 forbids the local agency from denying "approval of a final or parcel map if it has previously approved a tentative map for the proposed subdivision and if it finds that the final or parcel map is in substantial compliance with the previously approved tentative map." Likewise, *Beck* concerns a city's improper refusal to process a final map. No issue under the statute or the case is involved here: Hafen's final parcel map was not only approved, but also recorded.

Citing condition No. 18 of the TPM, Hafen argues, and the trial court found, there was no basis for denying a grading permit since Hafen's proposed rough grading did not deviate substantially from the approved TPM. (See discussion of condition No. 18, pp. 135–136 and 144, fn. 5, *ante*.) True, condition No. 18 allows the County to require a new map or SDP if the proposed grading deviates substantially from the grading illustrated on the approved TPM. But the condition does *not* eliminate the Zoning Code requirement set forth in part III, section C-6.1 of the FTSP, that an SDP be obtained before *any* grading permit is issued. And, as we have already noted, under the *Avco* rule, the Zoning Code sets the preemptive course.

Finally, Hafen argues he and the County had an agreement at the time the final parcel map was approved and recorded, obligating Hafen to construct certain road improvements and other improvements pursuant to the TPM, and the SDP requirement interferes with that contract. We find nothing in the agreement at odds with or preclusive of the County's enforcement of the SDP provision contained in the FTSP, and Hafen's six-sentence argument on the issue lacks both germane facts and law.

In light of our disposition, we need not discuss the other arguments raised by the County.

## DISPOSITION

The judgment is reversed. The case is remanded with directions to the superior court to deny Hafen's petition for a writ of mandate. The County shall recover its costs on appeal.

O'Leary, Acting P. J., and Aronson, J., concurred.

A petition for a rehearing was denied March 29, 2005, and respondents' petition for review by the Supreme Court was denied June 22, 2005.