[No. B169596. Second Dist., Div. Two. Feb. 3, 2006.]

CITY OF SANTA CLARITA, Plaintiff and Respondent, v.
NTS TECHNICAL SYSTEMS et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication with the exception of portions of part I. and the entirety of part IV.

## COUNSEL

Maher & Maher and Michael K. Maher for Defendants and Appellants.

Carl K. Newton, City Attorney; Burke, Williams & Sorenson, Brian A. Pierik and Alan A. Sozio for Plaintiff and Respondent.

## OPINION

**BOREN, P. J.**—NTS Technical Systems, Inc. (NTS), and ETCR, Inc. (ETCR) (collectively, appellants),[1] appeal from the judgment entered in an eminent domain action by the City of Santa Clarita (City). They contend the judgment must be reversed, because the trial court erred in finding they failed to show any qualifying goodwill loss; in excluding expert valuation testimony; and in computing the value of the "part take" (i.e., taking of a portion of the condemnee's property).[2] We affirm.

### FACTUAL AND PROCEDURAL SUMMARY

The City's project entailed construction and operation of a major arterial public road about 116 feet wide denominated Golden Valley Road (GVR).[3] In furtherance of its project, the City condemned an unimproved portion of ETCR's property, which consisted of 148.33 acres in then a relatively remote

---

[1] ETCR, also known as Ersland Training Center Corporation, was a wholly owned subsidiary of NTS. Its sole function was to hold title to real estate, and it was the owner of the Santa Clarita property. National Technical Systems, Inc. (not a party), was the parent of NTS (known as NTS California but doing business as National Technical Systems).

[2] Appellants acknowledge that mitigation damages are not at issue.

[3] On April 5, 2001, construction on phase I commenced. Phase III began on September 24, 2002. GVR was open to traffic on April 5, 2002. Phase II was not yet constructed as of trial.

and rural section of the City. NTS operated its Saugus/Santa Clarita facility on the property, which it leased. The condemned portion consisted of 0.461 acres (fee simple), 5.176 acres (slope/drainage easement), and 1.61 acres (temporary construction easement).

On August 3, 1999, City filed its eminent domain complaint, and made a probable compensation deposit of $48,175 based on an appraisal of Scott Lidgard. ETCR was served on August 14, 1999, with the immediate possession order. On October 14, 1999, appellants filed a joint answer to the complaint.

The court trial began on December 9, 2002. The statement of decision was issued on May 23, 2003. The trial court found the proper date of valuation was August 3, 1999, the date of the probable compensation deposit. The court further found appellants failed to show any goodwill loss caused by GVR. The amount of $48,917.53 was the just compensation for the "part take." On June 17, 2003, judgment was entered, and this appeal followed.

## DISCUSSION

### I.  *Loss of Goodwill Caused by GVR Not Shown*

Appellants contend the jury, not the court, determines whether the loss of goodwill was "caused by the taking of the property or the injury to the remainder" (Code Civ. Proc., § 1263.510, subd. (a)(1); hereinafter, section 1263.510(a)(1))[4] and that they made the requisite showing. We disagree.

■   "Goodwill" in this context "consists of the benefits that accrue to a business as a result of its location, reputation for dependability, skill or quality, and any other circumstances resulting in probable retention of old or acquisition of new patronage." (§ 1263.510, subd. (b).) The property owner has the initial burden to prove, by the preponderance of the evidence, that there was a loss of goodwill "caused by the taking of the property or the injury to the remainder" (§ 1263.510(a)(1)). (See, e.g., *Redevelopment Agency of San Diego v. Attisha* (2005) 128 Cal.App.4th 357, 367–368 [27 Cal.Rptr.3d 126]; *Regents of University of California v. Sheily* (2004) 122 Cal.App.4th 824, 831 [19 Cal.Rptr.3d 84] (*Sheily*); *Redevelopment Agency v. Thrifty Oil Co.* (1992) 4 Cal.App.4th 469, 475 [5 Cal.Rptr.2d 687].)

■   We conclude the trial court did not err in refusing to allow a jury to decide the issue of whether the prerequisite conditions for compensation existed. Compensation for goodwill loss involves a two-step process.

---

[4] All further section references are to the Code of Civil Procedure.

Whether the qualifying conditions for such compensation (§ 1263.510(a)) have been met is a matter for the trial court to resolve.[5] Only if the court finds these conditions exist does the remaining issue of the value of the goodwill loss, if any, go to the jury. (See, e.g., *Emeryville Redevelopment Agency v. Harcros Pigments, Inc.* (2002) 101 Cal.App.4th 1083, 1119 [125 Cal.Rptr.2d 12]; accord, *Sheily, supra,* 122 Cal.App.4th at p. 830.)[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## II. *August 3, 1999, Proper Date of Valuation*

Appellants contend the trial court erred in finding August 3, 1999, the date of City's original deposit, to be the date of valuation, because "City failed to deposit the true and real amount of probable compensation for ETCR's property when it commenced this action in 1999, and has *never* deposited any compensation on behalf of NTS." (Original italics.) Also, "it would be an unconstitutional denial of due process to value ETCR's property on a date *three years prior* to" the determination that City was entitled to take (not simply possess) that property. (Original italics.)[8] Alternatively, appellants argue that, if the date of valuation is the "date of deposit," this date should be the date of City's supplemental deposit, which was September 12, 2002. We find appellants' positions unpersuasive.

■ A property owner has a constitutional right to "just compensation," which is the fair market value of the property "at the time the taking occurred" by the public entity. (*Redevelopment Agency v. Gilmore* (1985) 38 Cal.3d 790, 796–797, 801 [214 Cal.Rptr. 904, 700 P.2d 794] (*Gilmore*); see also U.S. Const., 5th Amend.; Cal. Const., art. I, § 19.)

■ In a straight eminent domain action (no pretrial possession sought), the statutory date of valuation is the date the action began if trial on the compensation issue is commenced within one year; on the other hand, the statutory date of valuation is the date when trial on that issue commenced if trial is not brought within one year after the action began. (§§ 1263.120, 1263.130; *Leaf v. City of San Mateo* (1984) 150 Cal.App.3d 1184, 1190–1191 [198 Cal.Rptr. 447], overruled on another ground in *Trope v. Katz* (1995) 11 Cal.4th 274, 292 [45 Cal.Rptr.2d 241, 902 P.2d 259].)

---

[5] Appellants argue that the existence of these conditions is a jury matter. Their reliance is misplaced on the Court of Appeal opinion in *People ex rel. Dept. of Transportation v. Muller* (Civ. 54518), which is a nullity because it was vacated by a grant of review. (See, e.g., Cal. Rules of Court, rules 976, 977; see also *People ex. rel. Dept. of Transportation v. Muller* (1984) 36 Cal.3d 263 [203 Cal.Rptr. 772, 681 P.2d 1340].)

[*] See footnote, *ante,* page 264.

[8] The trial court ruled City met its burden to show its entitlement to the "part take."

Nonetheless, the statutory date of valuation does not control where its effect would deprive the owner of "just compensation." (*Gilmore, supra*, 38 Cal.3d at p. 797.) In this situation, the valuation date would be the date that affords the owner "just compensation." (See *Saratoga Fire Protection Dist. v. Hackett* (2002) 97 Cal.App.4th 895, 905–906 [118 Cal.Rptr.2d 696]; cf. *Kirby Forest Industries, Inc. v. United States* (1984) 467 U.S. 1, 17 [81 L.Ed.2d 1, 104 S.Ct. 2187] ["convention of using the date of the commencement of the trial as the date of the valuation" violates Fifth Amendment "if the result of that approach is to provide the owner substantially less than the fair market value of his property on the date the United States tenders payment"].)

In contrast, the date of valuation under the "quick take" or "early possession" law (§ 1263.110 et seq.) is a date on which the condemner deposits "probable just compensation" for the property, which entitles condemner to seek immediate possession. (See, e.g., *Gilmore, supra*, 38 Cal.3d at p. 801.)

As we shall demonstrate, the appropriate date for valuation of the property was August 3, 1999, rather than September 12, 2002, the date City voluntarily increased its original deposit, or December 9, 2002, the date of trial, which was more than a year after the action was filed.

On August 3, 1999, City deposited $48,175, which represented the "probable compensation" based on Lidgard's appraisal. Based on this date, D. Michael Mason, City's trial appraiser, valued the property at $80,250. On September 12, 2002, City voluntarily increased its deposit to reflect this amount. (See § 1255.030, subd. (f).)

At trial, the court ruled August 3, 1999, was the date of valuation. The court rejected appellants' argument that the date of valuation had to be changed in light of City's supplemental deposit.

Initially, we conclude the trial court did not err in finding August 3, 1999, to be the date of valuation under the "quick take" statutory scheme. It is undisputed that City made its deposit of "probable compensation" on August 3, 1999 (§ 1263.110, subd. (a)), and on September 10, 1999, the court issued an order of immediate possession.

We further conclude City's supplemental deposit on September 12, 2002, did not require the date of deposit to be changed to this later date. Appellants have not cited any persuasive authority for the proposition that the date of a

voluntary supplemental deposit supersedes the date of the original deposit. Moreover, such a conclusion is not compelled by law.[9]

■ Under the "quick take" statutory scheme, the condemner or "any party having an interest in the property for which the deposit was made" is entitled to make a motion requesting the court to "determine or redetermine whether the amount deposited is the probable amount of compensation that will be awarded in the proceeding." (§ 1255.030, subd. (a).) "If the [condemner] has taken possession of the property and the court determines that the probable amount of compensation exceeds the amount deposited, the court shall order the amount deposited to be increased to the amount determined to be the probable amount of compensation. If the amount on deposit is not increased accordingly within 30 days from the date of the court's order, or any longer time as the court may have allowed at the time of making the order, the [condemnee] may serve on the [condemner] a notice of election to treat that failure as an abandonment of the proceeding. If the [condemner] does not cure its failure within 10 days after receipt of such notice, the court shall, upon motion of the [condemnee], enter judgment dismissing the proceeding . . . ." (§ 1255.030, subd. (c).)

■ A plain reading of these provisions does not support an inference that the date of deposit, and thus date of valuation, transforms into the date of a supplemental deposit. Rather, the designated consequence of the condemner's refusal to increase the original deposit to the amount determined by the court is the possible dismissal of its eminent domain action. In other words, if appellants had invoked the procedure to increase the deposit, they might have obtained a ruling that $48,175 was insufficient; that this amount had to be increased to the actual probable compensation amount; and that if City failed to do so, they were entitled to move for dismissal. Appellants elected not to proceed in this manner.

■ In another section, the "quick take" statute provides that the condemner "may at any time increase the amount deposited without making a motion under this section." (§ 1255.030, subd. (f).) We consider this particular section in the context of the entire statutory framework. (See, e.g., *Phelps v. Stostad* (1997) 16 Cal.4th 23, 32 [65 Cal.Rptr.2d 360, 939 P.2d 760].) Nowhere does the statute address the valuation date in the context of such

---

[9] We note review was granted in *Mt. San Jacinto Community College Dist. v. Superior Court* (2005) 126 Cal.App.4th 619 [24 Cal.Rptr.3d 328], review granted May 18, 2005, S132252, and *San Diego Metropolitan Transit Development Bd. v. RV Communities* (2005) 127 Cal.App.4th 1201 [26 Cal.Rptr.3d 593], review granted July 20, 2005, S133786, regarding the proper valuation date where the owner elects to litigate the condemner's right to take the property instead of exercising its right to withdraw the funds deposited by condemner, which had the right to pretrial possession.

voluntary increase. We infer from this silence that the Legislature did not intend the date of a supplemental deposit to become the date of deposit.

■ In view of the foregoing, we hold that under the "quick take" statute, the original "probable compensation" deposit date is the date of valuation irrespective of any increase of deposit by the condemner.

■ Contrary to appellants' claim, it is inconsequential that NTS was not named as a defendant in the complaint filed on August 3, 1999, the same date the original deposit was made. It is ETCR, the owner, which is entitled to just compensation for land taken for public use. As a lessee, NTS is merely entitled "to share in the condemnation award to compensate for the value of his or her leasehold interest. (§ 1265.150; *City of Vista v. Fielder* (1996) 13 Cal.4th 612, 616 [54 Cal.Rptr.2d 861, 919 P.2d 151].)" (*Redevelopment Agency of San Diego v. Attisha, supra*, 128 Cal.App.4th 357, 366.) Apportionment is a matter between ETCR and NTS. (*Ibid.*)

Accordingly, under the "quick take" statute, the date of valuation is the date of the "probable compensation" deposit without regard to the existence of any leasehold. Thus, it was not required that the probable compensation deposit be made on or after the date NTS became a party to this action.

We find unpersuasive appellants' remaining claim that to allow the date of deposit to stand as the date of valuation would operate to deprive them of their constitutional right to "just compensation." They fail to support their claim with any applicable authority or record references. (See, e.g., *Sheily, supra*, 122 Cal.App.4th at pp. 826–827, fn. 1.)

Appellants' reliance on *Saratoga, supra*, 97 Cal.App.4th 895, is misplaced. Under section 1263.120, the valuation date was the date the proceeding commenced. The *Saratoga* court concluded it would be unconstitutional to use this valuation date where "unusual circumstances which, if believed by the trier of fact, would make it unjust to apply section 1263.120 to defendant's award." (*Saratoga*, at pp. 905–906.) The court concluded it was error to exclude evidence that the fair market value of the property at the time of trial, 11 months after the action commenced, had substantially increased, i.e., from $2 million to $3.2 million. (*Id.* at p. 906.) *Saratoga*, however, is factually inapplicable for the reasons that it was a straight condemnation, not a quick-take action and, unlike here, there was no deposit of probable compensation.

Moreover, if appellants believed that the "probable compensation" was an amount greater than the original deposit, they could have made a motion for redetermination of the appropriate amount of deposit, which they elected not

to do. (See *Kirby Forest Industries, Inc. v. U.S., supra,* 467 U.S. at pp. 17–18 [no violation of Fifth Amendment where there exists "a procedure for modifying a condemnation award when there is a substantial delay between the date of valuation and the date the judgment is paid, during which time the value of the land changes materially"]; see also *Whittier Redevelopment Agency v. Oceanic Arts* (1995) 33 Cal.App.4th 1052, 1060 [39 Cal.Rptr.2d 396] [trial court authorized to order an increase in the probable compensation deposit pending appeal from judgment by developer which acquired prejudgment possession of property, and amount of judgment exceeded amount deposited].)

III.   *Exclusion of Expert Testimony Not Abuse*

Appellants contend the trial court abused its discretion in excluding the testimony of Scott Delahooke based on his third appraisal and denying their motion for relief.[10] There was no abuse.

On June 11, 2002, the exchange date, appellants produced Delahooke's first appraisal with a $230,000 fair market value based on May 20, 2002, and indicated that he could use August 3, 1999.

On July 11, 2002, when Delahooke was deposed, appellants produced a second appraisal in which Delahooke again used May 20, 2002, but this time gave $815,000 as the fair market value and reiterated his offer to use the date of August 3, 1999.

On December 11, 2002, day three of trial, City was served with Delahooke's third appraisal, which was dated November 22, 2002, and gave $410,000 as the fair market value based on August 3, 1999.

City objected and made a motion in limine to exclude any valuation testimony by Delahooke, particularly his opinion based on his third appraisal. City essentially took the position that appellants acted in bad faith by instructing Delahooke, as a strategic tactic, to base his first and second appraisals on the May 20, 2002, date of valuation and that City was substantially prejudiced by the third appraisal which was belatedly served after trial began.

Appellants filed both opposition and a companion motion to allow Delahooke to testify (§§ 575.2, subd. (b) [failure to comply with local rules

---

[10] We deem waived appellants' claim that the court also erred in refusing to allow Clements and Lin to testify, which is not based on any specific argument or supported by record references and applicable authority. (See, e.g., *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273].)

not chargeable to client where noncompliance responsibility of counsel], 1258.290 [discretion to permit testimony on matters not set forth in statement of valuation data]). They conceded the motion only pertained to the third appraisal, because the earlier valuations based on the May 20, 2002, date were irrelevant in view of the court's ruling that August 3, 1999, was the correct valuation date.

The trial court granted City's motion and denied appellants'.

The trial court's rulings were not an abuse of discretion. (See, e.g., *City of San Diego v. Barratt American Inc.* (2005) 128 Cal.App.4th 917, 936 [27 Cal.Rptr.3d 527] [abuse of discretion standard applicable to exclusion of valuation of property expert testimony]; see generally *Dart Industries, Inc. v. Commercial Union Ins. Co.* (2002) 28 Cal.4th 1059, 1078 [124 Cal.Rptr.2d 142, 52 P.3d 79].)

■ The statement of valuation must include, among other data, "[t]he date of valuation used by the witness" and "[t]he sales, contracts to sell and purchase, and leases supporting the opinion." (§ 1258.260; see also §§ 1258.240, 1258.250.) Upon objection, "[n]o witness . . . may testify on direct examination during the case in chief of the party who called him to any opinion or data required to be listed in the statement of valuation data . . . unless such opinion or data is listed in the statement served except that testimony that is merely an explanation or elaboration of data so listed is not inadmissible . . . ." (§ 1258.280, subd. (c).)

■ Nonetheless, the trial court is imbued with discretion to permit a witness to testify regarding opinions or data which should have been included but were omitted from the statement "upon such terms as may be just" and under the circumstances that the party calling the witness made a good faith effort to comply with the requirements for exchange of valuation data (§§ 1258.210–1258.260); he diligently gave notice to the opposing party after determining "to have a witness called by him testify . . . to any opinion or data required to be listed . . . but which was not so listed" (§ 1258.270, subd. (a)(2)); and the omission of the opinion or data was the product of "mistake, inadvertence, surprise, or excusable neglect." (§ 1258.290, subd. (a).) The trial court also is required to "take into account the extent to which the opposing party . . . will be prejudiced if . . . the testimony concerning such opinion or data is given." (§ 1258.290, subd. (b).)

■ Additionally, a statement of valuation data must be exchanged between the parties in a timely manner. (§§ 1258.220, 1258.230, subd. (a).) The trial court is vested with "wide discretion in determining whether or not good cause has been shown for the delay in presenting valuation data to an

opposing party." (*Redevelopment Agency v. First Christian Church* (1983) 140 Cal.App.3d 690, 700 [189 Cal.Rptr. 749].) The court's ruling will be upheld if supported by substantial evidence. (*Id.* at p. 701.)

Appellants do not dispute that service of the third appraisal on City did not comply with the date agreed upon for exchange and that such service was not on "a date 90 days prior to commencement of the trial on the issue of compensation or [a] date set by the court on noticed motion of either party establishing good cause therefor." (§ 1258.220, subd. (a).) Delahooke's third appraisal therefore was untimely.

Moreover, the trial court's findings of lack of good faith, absence of requisite notice, and inexcusable delay are supported by ample evidence. The court impliedly found the omission from the first and second appraisals of Delahooke's opinions and valuation data based on a August 3, 1999, date of valuation and the tardy service of the third appraisal were the product of a deliberate decision of appellants to obtain a strategic advantage over City, rather than the inadvertence or neglect of their counsel.

Appellants' decision to base their first and second appraisals on a date other than the statutory date of valuation, i.e., August 3, 1999, necessarily was based on an informed choice. On their face, the first and second appraisals reflect that, if requested, Delahooke would value the property based on August 3, 1999, the date of deposit. In his deposition, which was before his third appraisal, Delahooke, an experienced appraiser, admitted that he had never before used a date of valuation other than the date of deposit. He acknowledged that appellants' counsel, contrary to his advice, directed him to value the property as of May 20, 2002, instead of the date of deposit.

With respect to the third appraisal, appellants do not claim that they were precluded by City or otherwise from serving City with a pretrial statement of valuation data based on August 3, 1999. Instead, appellants relied on the declaration of their counsel, Michael Maher, to justify the omission of the opinion and valuation data from the earlier two appraisals and the late service of the appraisal. He explained the choice of a date other than August 3, 1999, was based on uncertainty about the proper valuation date and that the third appraisal was necessitated by the trial court's determination of August 3, 1999, as the correct date. It is not for us to rejudge the trial court's determination that this explanation was not worthy of credit. (See, e.g., *Bazaure v. Richman, supra,* 169 Cal.App.2d 218, 221–222 [336 P.2d 1014].)

Similarly, abundant evidence supports the trial court's finding that service of the belated third appraisal was prejudicial. The purpose of exchanging statements of valuation data in advance of trial is to foster fairness and

judicial economy. "In condemnation proceedings this has taken the form of an exchange of reports of experts during the final pretrial proceedings immediately in advance of trial. The key element is mutuality." (*Swartzman v. Superior Court* (1964) 231 Cal.App.2d 195, 203–204 [41 Cal.Rptr. 721].) This purpose would be subverted if one party were allowed to confront the other party with a statement of valuation data for the first time during trial based simply on the excuse of earlier indecisiveness. (See, e.g., *Swartzman, supra,* at p. 204 [genuine disclosure pretrial inhibited where party could merely "profess indecision until the day of trial"].)

Moreover, the untimely service of the statement might deprive the other party of the opportunity to counter its contents and effect. (See, e.g., *Bonds v. Roy* (1999) 20 Cal.4th 140, 148 [83 Cal.Rptr.2d 289, 973 P.2d 66] ["Allowing new and unexpected testimony for first time at trial" inconsistent with requirement of "timely disclosure of the general substance of an expert's expected testimony" in order for "parties . . . properly [to] prepare for trial"].) This is the situation here. Contrary to appellants' claim, the third appraisal was not simply a nonprejudicial "mathematical recalculation" of already known information. Rather, it was based on two new sales which were not listed in the earlier appraisals. One was the sale of the 38.26-acre Ruether Avenue parcel[11] and the other was the sale of the 16.02-acre 20976 Golden Triangle parcel. Moreover, Delahooke opined these were "the only truly comparable sales" and that they were "the most comparable to the subject in location, date of sale and physical conditions . . . ." (Cf. *County of Los Angeles v. Kling* (1972) 22 Cal.App.3d 916, 922–923 [99 Cal.Rptr. 642] [value opinion testimony admissible where answer already placed condemner on notice of owner's opinion].)

Mason declined to include the 20976 Golden Triangle sale as a comparable in his pretrial valuation. This fact, however, does not cure the City's loss of opportunity to prepare in advance of trial to counter the underpinnings of Delahooke's new valuation opinion. The first appraisal value of $230,000 was based on a 2002 date while the third appraisal value of $410,000 was based on a 1999 date. This almost doubling of valuation was peculiar: real estate prices rose from 1999 to 2002. (Cf. *State of California ex. rel. Public Works Bd. v. Bragg* (1986) 183 Cal.App.3d 1018, 1028, 1029–1030 [228 Cal.Rptr. 576] [preclusion of valuation evidence not appropriate where prejudice showing questionable].)

---

[11] This sale was in January 2000. The second appraisal relied on the November 2001 sale of the same parcel.

IV. *Amount of $48,917.53 as Just Compensation Not Error*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed. City to recover costs on appeal.

Doi Todd, J., and Ashmann-Gerst, J., concurred.

---

[*]See footnote, *ante*, page 264.